In Re WILLIAMS' ESTATE. WILLIAMS, Respondent, *v.*
DAVIS et al., Appellants.

(No. 3,690.)

(Submitted March 23, 1916. Decided April 30, 1916.)

[156 Pac. 1087.]

*Wills—Probate Proceedings — Contest — Testamentary Incapacity—Undue Influence — Want of Publication — Evidence—Wealth of Beneficiary—Findings—Inconsistency—Witnesses—Impeachment—Rebuttal—Trial—Reading Court Opinion—Discretion.*

Wills—Probate Proceedings—Trial.
1.   Where in a will contest the district court reserved its decision upon proponents' offer of it for probate and then after a jury trial, rendered judgment rejecting it, complaint that the offer was never passed upon was without merit.

Same—Contest—Wealth of Beneficiary—Evidence—Admissibility.
2.   Evidence of the great wealth of the principal beneficiary under a will attacked for incapacity of the testatrix and undue influence, was admissible as tending to show an unnatural disposition of her property, it appearing that by it she practically disinherited her grandchild, who was her only near blood relation and for whom she had always manifested the greatest affection.

Same—Trial—Reading Court Opinion—Discretion.
3.   Failure to excuse the jury while counsel, during the examination of a witness and over objection, read from the opinion of another court in another case, was not reversible error, in the absence of a showing of abuse of its discretion.

Same—Witnesses—Impeachment—Rebuttal.
4.   Where the character of a witness whose deposition had been introduced was attacked by a deposition showing that at the time of the trial he was confined in a penitentiary, evidence of his previous good character was admissible in rebuttal.

Same—Finding—Inconsistency.
5.   A finding of want of testamentary capacity is not so far inconsistent with one of undue influence that both may not stand.

[As to tests of undue influence, see note in 31 Am. St. Rep. 670.]

Same—Appeal and Error—Burden of Appellant.
6.   Where the probate of a will was attacked on the grounds of want of publication, incapacity of the testatrix and undue influence, and a decree rendered based on findings sustaining all such grounds, appellants had the burden of showing that all the findings were erroneous, since the correctness of any one of them was sufficient to sustain the decree.

As to effect of unnatural disposition of property on the question of undue influence, see notes in 22 L. R. A. (n. s.) 1024; 6 L. R. A. (n. s.) 202.

*Appeal from District Court, Silver Bow County, Second Ju-dicial District; R. Lee Word, a Judge of the First Judicial District, presiding.*

In the Matter of the estate of Rachel E. Williams, deceased. Proceeding by Andrew J. Davis and Lyman M. Harley for the probate of an alleged will, contested by Dorothy Alice Williams by her guardian, Sibyl Scott. From a judgment for contestant and an order denying a new trial, proponents appeal. Affirmed.

*Messrs. Shelton & Furman, Mr. James A. Poore* and *Messrs. Maury, Templeman & Davies,* for Appellants, submitted a brief as well as one in reply to that of Respondent; *Mr. H. L. Maury* argued the cause orally.

Evidence of the wealth of Davis was inadmissible. The financial condition of a legatee who was a mere acquaintance cannot be shown. (*In re Merriman's Appeal,* 108 Mich. 454, 66 N. W. 373.) Where a testator left his estate to a person who was not related to him, and named the father of the legatee as executor, the fact that the executor was a wealthy man is irrelevant to the issue. (*Murphree* v. *Senn,* 107 Ala. 424, 18 South. 264.) And evidence of wealth is incompetent even though the legatee is the sole person named in the will and the testator left next of kin. (*Murphree* v. *Senn,* 107 Ala. 424, 18 South. 264.) *In re Kaufman's Estate,* 117 Cal. 288, 59 Am. St. Rep. 179, 49 Pac. 192, the trial court per-mitted the contestant, against the objection of the proponent, to give evidence of the amount of property owned respectively by the husbands of the beneficiaries under the will, and also that the contestant and her husband were comparatively with-out any property. Held error. (See, also, *In re Lavinburg's Estate,* 161 Cal. 536, 119 Pac. 919.)

There are authorities which hold that the provisions of the will may be considered, in connection with other evidence, in trying the question of undue influence, but the disposition of the property as made in the will is not of itself evidence of

such influence; and the court cannot assume to judge of the justice of the provisions of .the will, or question the motives of the testator in making it. (*In re Hess' Will*, 48 Minn. 504, 31 Am. St. Rep. 665, 51 N. W. 614.) And some of the authorities hold that the unnatural disposition of property is one of the elements to be considered in determining the question of undue influence, but it has no effect in the absence of other testimony going to prove undue influence, for every person possessing testamentary · capacity may, except so far as his right is restricted by statute, dispose of his property by his will as he sees fit, and no matter how unjust the disposition may be, it does not of itself raise a presumption of undue influence. (*Knox* v. *Knox*, 95 Ala. 495, 36 Am. St. Rep. 235, 11 South. 125; *Storer's Will* (*Storer* v. *Zimmerman*), 28 Minn. 9, 8 N. W. 827.) Undue influence, sufficient to invalidate a will, is that kind of influence which prevents the testator from exercising his own judgment, and substitutes in the place thereof the judgment of another. (*In re Weber's Estate*, 15 Cal. App. 224, 114 Pac. 597; *In re Rick's Estate*, 160 Cal. 450, 117 Pac. 532; *In re Holbert's Will*, 15 Misc. Rep. 308, 37 N. Y. Supp. 757.) To establish the charge of undue influence or fraud, two points must be sustained: First, the fact of the deception practiced or the influence exercised; and second, that this fraud and influence were effectual in producing the alleged result. (Schouler on Wills, 5th ed., 292; *In re Hess' Will, supra.*)

Reading from decisions which do not state the law of the case in the presence of the jury may have such a bearing upon their minds as to mislead them, and is reviewable on appeal (*Gregory's Admr.* v. *Ohio River Co.*, 37 W. Va. 606, 16 S. E. 819; *Stratton* v. *Dole*, 45 Neb. 472, 63 N. W. 875; 38 Cyc. 1480, 1481.) The reading of decisions in the presence of the jury is not to be commended, and if permitted, the matter read must be pertinent to the issue. (*Hastings* v. *Northern Pac. R. Co.*, 53 Fed. 224; *Philpot* v. *Taylor*, 75 Ill. 309, 20 Am. Rep. 241.)

On the subject of inconsistent findings, we claim the law to be that an order should be made granting a new trial (a) if the findings of the special verdict are inconsistent with each other as to a material matter; (b) that a new trial should be granted if the findings on a material matter are inconsistent with an undisputed fact, where the testimony comes from disinterested witnesses, and there is no presumption to aid it; (c) that a new trial should be granted if a finding on a material matter in favor of a party on whom the burden of proof rests is not supported by any testimony. We claim that either of these three conditions demonstrates that the jury was actuated by prejudice or passion, or such a bias as prevented the party aggrieved thereby from having a fair or an impartial trial. (*Kansas City R. R. Co.* v. *Ryan,* 52 Kan. 637, 35 Pac. 292; *Gwin* v. *Gwin,* 5 Idaho, 271, 48 Pac. 296; *Gould* v. *Stafford,* 77 Cal. 66, 18 Pac. 879.)

*Mr. J. E. Healy,* for Respondent, submitted a brief and argued the cause orally.

The answer of the jury to a special question propounded by a contestant is binding upon him. (*Gumtow* v. *Janke,* 177 Mich. 574, 143 N. W. 616.) The same rule should apply to the proponents in this instance.

The findings of the jury conclusively disestablish the proposed will. (40 Cyc. 1341, notes 24, 25 (III); *Macafee* v. *Higgins,* 31 App. (D. C.) 355.) Where the verdict is had in favor of the caveator in a contest based upon several grounds, reversal can be had on appeal only upon showing error in regard to each of the grounds stated. (*Macafee* v. *Higgins, supra.*) In this connection, see, also, *Eckert* v. *Page,* 161 App. Div. 154, 146 N. Y. Supp. 513.

As to the error urged with relation to the admission of evidence touching the wealth of Davis, we again content ourselves with the following authorities: Borland on Wills, 239; *McFadin* v. *Catron,* 120 Mo. 252, 25 S. W. 506; *Mowry* v. *Norman,* 223 Mo. 463, 122 S. W. 724. In any proper case the wealth

of the parties may be given in evidence for relevant purposes and within reasonable bounds. (*Downs* v. *Cassidy,* 47 Mont. 471, Ann. Cas. 1915B, 1155, 133 Pac. 106; Borland on Wills, 239, note 31.)

The unjust, unnatural and unreasonable disposition of property by a testator who shows no animosity toward a person slighted in a will, in favor of one to whom there was given large property without reason, may always be shown to the jury. (*Martin's Estate,* 170 Cal. 657, 151 Pac. 141; *Wasserman's Estate,* 170 Cal. 101, 148 Pac. 932.) The issues of nonexecution and of undue influence were each and both submitted to the jury upon the request of the proponents under their instructions offered, together with the other special findings requested by them as well. So, having offered these findings and instructions, they cannot complain of them. (*Yegen Bros.* v. *Board of Commissioners,* 34 Mont. 79, 85 Pac. 740.) And also having injected these features into the case, they cannot put the court in error for having submitted inconsistent issues, if it be thought that these issues are inconsistent. I submit that any inconsistency is more fancied than real. The findings are not so intimately connected that error in one implies error in the other. Hence, if either be supported by the evidence, and it does not appear that substantial error intervened affecting it, the other may be regarded as immaterial. (*In re Murphy's Estate,* 43 Mont. 353, Ann. Cas. 1912C, 380, 116 Pac. 1005.)

In the present case, the evidence overwhelmingly preponderates —from any point of view—in favor of the nonexecution of the alleged will and of the issue of undue influence, that it shows a single purpose on the part of the proponents, at all times, logically resulting in this alleged and unnatural will. (Schouler on Wills, sec. 165.) Evidence of affection and declarations thereof for Dorothy were properly admitted. (*Lavinburg's Estate,* 161 Cal. 536, 119 Pac. 915; 3 Wigmore on Evidence, sec. 1738, p. 2243.) An unjust or unnatural will may be corroborative evidence of undue influence. (Schouler on Wills, sec. 165;

Borland on Wills, p. 259, note 28; 40 Cyc. 1032–1035.)   So it was also proper to show who, if anyone, had the means and opportunity of instilling prejudices into the mind of Mrs. Williams. (*In re Esterbrook*, 83 Vt. 229, 75 Atl. 1.)

As to the admission of testimony relating to the reputation of Frank C. Norbeck for truth and veracity, there was no error committed whatsoever.   In the first place, the objection made to the attempted impeachment of Norbeck by proof of conviction should have been sustained.   But the court allowed other than the statutory methods to be pursued in impeaching Norbeck.   Either by way of producing the record of the judgment, or by asking the witness on cross-examination, it may be shown that he has been convicted of a felony.   (Rev. Codes, secs. 8024, 8030, 8031, 7999, 8001.)   This was never done; and to violate the statute was error.   (*State* v. *Black*, 15 Mont. 143, 38 Pac. 674; *State* v. *Crowe*, 39 Mont. 174, 177, 18 Ann. Cas. 643, 102 Pac. 579.)   The application to take the deposition was not within the statute; there was no testimony sought to be obtained to prove any issue of fact.   (Rev. Codes, sec. 7999.)   Norbeck was never convicted of a felony.   Section 5209 of the Revised Statutes of the United States makes the offense a misdemeanor.   Norbeck could not be impeached as to a misdemeanor.   (*People* v. *McGee*, 24 Cal. App. 563, 141 Pac. 1058.) Depositions will not be allowed for the mere purpose of impeachment.   (*Woods* v. *Mann*, 2 Sumn. 316, 30 Fed. Cas. No. 17,953.)   In any event, the impeachment of Norbeck, if it be regarded as such, was upon collateral matters only, and the test, as to what is a collateral matter, is thus made by Chief Baron Pollock: ''Whether it concerns a matter which you would be allowed on your part to prove in evidence independently of the self-contradiction, *i e.,* if the witness had said nothing upon the subject.''   (*Trabing* v. *California Nav. & Imp. Co.,* 121 Cal. 137, 53 Pac. 644; Wigmore on Evidence, sec. 1020.)   A witness is entitled to the same privileges and immunities when a deposition is taken as when examined in open court.   (*Ex parte Button*, 83 Neb. 636, 23 L. R. A. (n. s.)

1173, 120 N. W. 203; Kerr's Code Civ. Proc., sec. 7, p. 2453.) Only the way permitted by law may be followed. (Cal. Code Civ. Proc., Kerr's ed., p. 2480, notes, 30, 33, 34, 36, 37, 48.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Upon the former appeal (*In re Williams' Estate*, 50 Mont. 142, 145 Pac. 957) a new trial was awarded because the evidence was insufficient to show due publication of the writing proffered as the last will and testament of Rachel E. Williams, deceased. Upon the second trial the subscribing witness Estabrook so far changed his testimony as to supply the deficiency noted in our former opinion, but the testimony of Norbeck, the other subscribing witness, is to the effect that nothing whatever was done or said by Mrs. Williams, at the time the writing was signed, to indicate that it was understood or intended by her to be her will. The jury were at liberty to accept Norbeck's testimony and find that there was not any publication, or they could believe Estabrook and Harley and reach the contrary conclusion. They chose the first alternative and, in response to special interrogatories, returned that Mrs. Williams did not publish or declare to either subscribing witness that the writing in question was her will. That finding is supported by competent evidence. The jury passed upon the credibility of Norbeck in the first instance; the presiding judge reviewed the evidence on motion to adopt the findings and a distinguished member of the state's judiciary, called in to pass upon the motion for a new trial upon the cold record, in denying the motion has stamped the seal of his approval upon the special verdict. Under these circumstances we might with propriety refer to our former decision as conclusive, and upon that authority affirm the judgment and order below. But counsel for appellants insist that certain prejudicial errors were committed, and because of them a fair and impartial trial of the issues was not had.

1. The proponents first made out their *prima facie* case to the court sitting without a jury. The will was received in evi-
[1] dence and was then formally offered for probate. The court reserved its decision upon the offer, called a jury and tried the contest—the contestant assuming the burden as plaintiff—and the will was again offered and received in evidence. The jury returned special findings which were adopted, and a judgment was rendered in which the trial court declared: ''That the said instrument offered herein for probate be and the same is hereby adjudged to be rejected and to be of no force or effect as the or any last will and testament of Rachel E. Williams, deceased; that the same is held for naught, and that the same is denied to probate.'' Complaint is made that the court never passed upon appellants' offer of the instrument for probate, but the recital from the record above is a sufficient answer. In the matter of procedure, the cause was tried so well that it deserves commendation. It was in all respects technically correct. (*In re Murphy's Estate,* 43 Mont. 353, Ann. Cas. 1912C, 380, 116 Pac. 1004; *Farleigh* v. *Kelley,* 28 Mont. 421, 63 L. R. A. 319, 72 Pac. 756; *In re Williams' Estate,* above.)

2. Mr. Andrew J. Davis was called as a witness for contestant and, over objection, was required to answer as to his wealth
[2] at the time the alleged will was executed. He testified in substance that he was then worth more than $1,000,000. The court's ruling upon the admissibility of this evidence is assigned as error. By the terms of the alleged will, this contestant, Dorothy Alice Williams, was cut off with $500; a domestic was to receive $1,000; and all the residue of the $100,000 estate was bestowed upon ''Andrew J. Davis, adult banker  *  *  *  *as his property absolutely.''* The will was attacked for (a) failure of due execution, including publication; (b) incapacity of the testatrix; and (c) undue influence.

Rachel E. Williams had but one child, George H. Williams, who died about January 7, 1907, leaving surviving him an only child, Dorothy, the contestant herein, who was then but 7½ years old. The record establishes that Mrs. Williams had always

manifested the greatest affection for her granddaughter, and had confided to the wife of her family physician that she intended to devote at least $20,000 to Dorothy's education; that the child visited her grandmother frequently and, when away from her, they corresponded to some extent; that about January 24, 1907, Dorothy went from her home in Helena to Anaconda and spent three or four days with Mrs. Williams. The record further discloses that as early as December 21, 1906, Mrs. Williams, a woman then of seventy years or upward, was suffering from a general breakdown; that she was the victim of nephritis, commonly called Bright's Disease; that the disease was in an advanced stage and progressing rapidly; that to take her from her home in Butte to Anaconda it was deemed necessary to move the railway car to a point near her home, rather than attempt to move her to the depot, and that her family physician should accompany her; that she was very weak on January 7; that at the time this writing was signed, according to the witness Norbeck, "she looked like a very ill person * * * and did not seem to be much interested in the proceedings. * * * There was nothing said by Mrs. Williams or anyone about the nature of the contents of the papers." On February 27, Mrs. Williams was in a state of coma, and on March 3 she died.

Bowed down by the keenest grief for the loss of her only child—George—without near relatives in all the world, except her seven year old granddaughter, to whom her attachment would naturally be greatly intensified after her son's death, and within two weeks after that loss occurred, it is pretended that Mrs. Williams made her will, cutting off her only blood kinship with a bare pittance and bestowing her comfortable fortune upon a millionaire banker, not in any wise related to her by ties of blood, marriage, or even intimate friendship, and that two or three days after making such disposition of her property, she received and entertained her granddaughter for a considerable time at her apartments in Anaconda. It is unnecessary to refer to the medical testimony characterizing the

dread disease from which Mrs. Williams suffered and died, or
the effect upon the mind of the retention in the system of the
morbid matters which the diseased organs were powerless to
throw off. It suffices for present purposes to say that we in-
cline to the belief that the evidence of the intimate relationship
between Mrs. Williams and her grandchild, of her physical
condition and the peculiarly unnatural disposition of her prop-
erty furnished a sufficient foundation for the legitimate infer-
ence that at the time this writing in question was executed,
Mrs. Williams did not possess testamentary capacity. Upon
this hypothesis, the evidence of Mr. Davis' wealth was un-
questionably competent and material; but in their brief counsel
for appellants insinuate, without asserting, that the disposition
of her property by Mrs. Williams was neither harsh nor un-
natural, but, on the contrary, evidenced her wisdom and her
business acumen. They say: "She made a millionaire adult
banker her ostensibly sole beneficiary under the will for the
express purpose of protecting Dorothy, and of providing a
safe conduit for Dorothy's second very considerable fortune
until the day when the law says that Dorothy is wise enough
to handle it herself." In this counsel exceed the bounds of argu-
ment. There is not the slightest intimation in the record, so far
as we can ascertain, that this contestant has ever received a cent
from any source, or that Mrs. Williams intended to create a trust
fund for Dorothy's use or benefit. The alleged will itself declares
that the devise is to Mr. Davis *"as his property absolutely,"* and
the history of this litigation demonstrates that the principal bene-
ficiary is standing upon what he deems his strict legal rights
to have this property as his own.

Upon the record we say that the will undertook to make a
most unnatural disposition of the property, and evidence of
such fact is always admissible as a circumstance to be con-
sidered with other evidence, as tending to show an unbalanced
mind or a mind easily susceptible to undue influence. (Ross
on Probate Law and Practice, sec. 51.)

In *Wilson's Estate*, 117 Cal. 262, 49 Pac. 172, the court said: "If a man who had always lived in apparently the most affectionate relations with his family should leave a will in which all his property was granted to strangers, and no reason could be suggested or explanation made why he thus disinherited those near relatives whom he had always seemed to love, this circumstance would certainly tend to show some delusion or alienation of reason at the time of the testamentary act."

In 1 Schouler on Wills, fifth edition, section 77, the same subject is covered in a sentence: "In fine, a harsh and unnatural disposition by the will in question is a circumstance which tends to discredit the maker's testamentary capacity." (See, also, section 240.)

The evidence of the principal beneficiary's great wealth was competent for the very purpose of emphasizing the unnatural and unusual disposition which Mrs. Williams apparently attempted to make of her fortune. (*Mowry* v. *Norman*, 223 Mo. 463, 122 S. W. 724; *In re Esterbrook*, 83 Vt. 229, 75 Atl. 1; 40 Cyc. 1034, 1035; 28 Am. & Eng. Ency. of Law, 2d ed., 106; *Manatt* v. *Scott*, 106 Iowa, 203, 68 Am. St. Rep. 293, 76 N. W. 717.)

The testimony relating to Mr. Davis' wealth was competent. The weight to be given to the evidence of an unnatural disposition of the property was for the jury.

3. Counsel for proponents having objected to a question asked [3] the witness Mrs. Freund, the attorney for contestant called the court's attention to *Meier* v. *Buchter*, 197 Mo. 68, 7 Ann. Cas. 887, 6 L. R. A. (n. s.) 202, 94 S. W. 883, and over objection read to the court, in the presence of the jury, Judge Lamm's vigorous opinion. We cannot upon this record convict counsel of unprofessional conduct in seeking by indirection to get before the jury the facts of the *Meier Case* and the comment thereon, when ordinarily he would not be permitted to read the opinion to the jury directly. (*Mahoney* v. *Dixon*, 34 Mont. 454, 87 Pac. 452.) We must assume that counsel acted in good faith, and, if so, it was a matter within the discretion

of the trial court whether the jury should be excused during the reading. There is no evidence of any abuse of discretion. We think the presiding judge remarked pertinently that he could not excuse the jury every time an objection was to be considered.

4. The contestant's case depended very largely upon the evidence furnished by the subscribing witness Norbeck. His [4] dence furnished by the subscribing witness Norbeck. His testimony was placed before the jury by contestant in her case in chief. Proponents then introduced a deposition which disclosed that at the date of this second trial, Norbeck was confined in the federal prison at McNeil Island, serving a sentence imposed by the United States district court for the district of Idaho. In rebuttal, contestant called certain witnesses who, over objection of proponents, were permitted to testify to Norbeck's good reputation. It is quite evident that the principal, if not the sole, purpose of introducing the deposition was to discredit Norbeck. It was a direct attack upon his character, and the correctness of the court's ruling in permitting contestant to fortify his credit by evidence of his previous good reputation is so manifest that the citation of authority would seem unnecessary. The rule is as old as the law itself, and is embodied in our statute. (Rev. Codes, sec. 8026.) See 5 Jones' Commentaries on the Law of Evidence, sections 865–867, where abundant authority to sustain the trial court's ruling will be found and the decided cases cited.

5. The trial court submitted to the jury thirteen special interrogatories, which were all answered. It is now insisted that [5] these findings are so inconsistent that they destroy each other, or at least demonstrate that the jurors were actuated by bias or prejudice. Briefly summarized, the findings are: That on January 21, 1907, when the alleged will was executed, (a) Rachel E. Williams was not of sound and disposing mind; (b) she did not subscribe the instrument *as her last will and testament;* (c) she did not publish it as her will; (d) she did not request Norbeck and Estabrook each to sign his name as a witness; (e) Mrs. Williams was not acting freely, but was under

the undue influence of Lyman M. Harley. The only possible inconsistency is between the first and the last; but a finding of want of testamentary capacity is not so far inconsistent with a finding of undue influence that both may not stand. (*In re Murphy's Estate,* above.) It may be conceded that the evidence is insufficient to sustain the finding of undue influence. We have already determined that the finding of want of publication is sustained by sufficient competent evidence, and that finding alone is fatal to appellants' claim. Without due publication there is not a will, and if the writing is not a valid will, neither of these appellants is concerned in the least.

The further findings that Mrs. Williams was without testamentary capacity, and that she labored under the undue influence of Harley, might well be disregarded. There were facts and circumstances from which the jury might have determined the question of mental capacity as they did, and from which they doubtless drew their conclusion that the testatrix was acting under undue influence. Whatever else may be said of the evidence upon which these two findings were made, there is sufficient substance to it to exonerate the jury from any imputation that the findings are merely indicative of passion or prejudice.

It cannot be contended that because of an erroneous finding, [6] a judgment, otherwise proper and fully sustained by correct findings, must be set aside. Appellants must bear the burden of showing that there is not any correct finding which will sustain the judgment. (*McDermott* v. *Severe,* 202 U. S. 600, 50 L. Ed. 1162, 26 Sup. Ct. Rep. 709; *Dexter* v. *Codman,* 148 Mass. 421, 19 N. E. 517; *Morgan* v. *Adams,* 29 App. Cas. (D. C.) 198.)

It is beside the question that the evidence upon all the issues submitted was in sharp conflict, or that there were presented other facts and circumstances from which a different jury or another trial judge might reach a different conclusion. The jury passed upon the credibility of the witnesses in the first instance, and the trial court did likewise in review upon the

motion for a new trial. With their determination we do not feel justified in interfering.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.