## IN RE WILLIAMS' ESTATE.

### (Nos. 4,108, 4,110.)

### (Submitted May 6, 1918. Decided June 10, 1918.)

### [173 Pac. 790.]

*Estates of Deceased Persons — Special Administrators—Powers*
*—Interest—Costs—Attorney's Fees.*

Special Administrators—Who Entitled to Appointment.

1. Where the necessity for a special administrator arises in the administration of an estate, a person named executor in the will is, under section 7472, Revised Codes, entitled to be appointed as such.

[As to who may be an executor or administrator, see note in 54 Am. Dec. 518.]

Same—Powers and Duties.

2. The office of special administrator is statutory, his powers and duties are limited to those enumerated in the statute (secs. 7470–7476, Rev. Codes), and his authority ceases automatically upon the appointment and qualification of the executor or general administrator.

Same—District Court—Jurisdiction.

3. The district court is without power to require a special administrator to go beyond the fair import of the terms of the statute governing his actions.

Same—Loaning Funds—Interest.

4. A special administrator has no power to loan the funds of the estate in his charge, and therefore cannot be held to pay interest for failing to loan them.

Same—Who Entitled to Interest on Funds.

5. If a special administrator receives profits from funds of the estate in his keeping, such profits belong to the heirs and must be included in his final account.

Same—Presumptions—Abuse of Power—Burden of Proof.

6. The presumption is that the official duties of a special administrator were regularly performed and that he did not abuse his power; and the burden of showing that profits accrued to him from use of the funds of the estate is upon the objectors who charged wrongful conduct.

Same—Interest on Estate Funds—Unlawful Use.

7. Since a special administrator cannot lawfully invest, loan or use funds which come into his hands by virtue of his office, the only theory upon which he can be held to account for profits accruing upon them is that he made an unlawful use of them.

Banks and Banking—Deposits—Ownership.

8. When money is deposited in a bank it becomes its property, the bank assuming the relationship of debtor toward the depositor; hence use of it by the bank is a use of its own and not the depositor's funds.

Special Administrators—Failure to Loan Funds—Interest.

9. Where a special administrator permitted estate funds to remain in an open, checking account for about nine years in a bank, all but fourteen per cent of the capital stock of which was owned by him,

he was nevertheless not chargeable with interest upon the theory that by mingling the funds with those of the bank and using them he unlawfully profited by their use.

Same—Costs—When Disallowance Proper.
10.   Where court costs incurred by a special administrator were impossible of separation from costs personal to him as residuary legatee, refusal of any credit on account of such items was proper.

Same—Attorneys' Fees—When Allowable.
11.   Attorneys' fees paid by a duly appointed special administrator in resisting the efforts of an illegally appointed public administrator to obtain possession of the property of the estate were a proper cost charge against it.

Same—Wrongful Withholding of Property—Payment of Taxes.
12.   Credit for taxes paid by a special administrator upon property wrongfully withheld by him when he relinquished his office was properly disallowed in the absence of a showing that no prejudice to the estate resulted by reason of his omission.

Same—Care of Property—Expense Chargeable to Estate.
13.   Where a special administrator permitted the person, placed in charge of furniture belonging to the estate, to use it in consideration of his services as caretaker, the damage resulting from such use was not chargeable to the administrator, it amounting to much less than the compensation a paid caretaker could have been secured for.

Same—Costs—Liability—Rule.
14.   Where it is sought to have costs taxed against an administrator personally, the controlling inquiry is whether he acted in good faith; if so, justice requires that they be paid out of the funds of the estate.

Same—Costs—Liability.
15.   *Held*, under the above rule, that costs of defeating the unjust claim against a special administrator that he pay interest on estate funds while in his hands were improperly charged against him.

*Consolidated appeals from District Court, Silver Bow County, in the Second Judicial District; R. Lee Word, a Judge of the First District, presiding.*

PROCEEDINGS in the estate of Rachael E. Williams, deceased, wherein Andrew J. Davis, special administrator, presented his final account, to which Sibyl Scott, as administratrix of Rachael E. Williams and Dorothy Alice Williams, a minor, by her guardian, Sibyl Scott, objected. From an order sustaining some objections and overruling others, the objectors appeal, and from a portion of the order the special administrator appeals. Remanded, with directions.

*Mr. J. E. Healy,* for Appellants, submitted a brief, as well as one in reply to that of Respondent, and argued the cause orally.

The burden was upon the special administrator to show that he did not profit by his trusteeship, the record shows that he did profit. (Wigmore on Evidence, secs. 2486, 2487; Rev. Codes, sec. 8028 (subds. 6, 7). He created the delay, in his own interest, and to his own profit and advantage, and should be charged with compound interest. (*Estate of McPhee,* 156 Cal. 335, Ann. Cas. 1913E, 902, and cases cited, 104 Pac. 455; *Estate of Lux* (Cal.), 35 Pac. 347; *Estate of Pease,* 149 Cal. 167, 85 Pac. 151; *Estate of Ricker,* 14 Mont. 143, 29 L. R. A. 622, and notes, 35 Pac. 960; *Estate of Allard,* 49 Mont. 219, 141 Pac. 661; *Estate of Philps,* 29 Misc. Rep. 263, 61 N. Y. Supp. 241.)

*Messrs. Maury & Wheeler* and *Mr. J. A. Poore,* for Respondent, submitted a brief; *Mr. H. L. Maury* and *Mr. Poore* argued the cause orally.

Where the right to a controverted administration is successfully established, the administrator is entitled to credit for the expenses of the controversy. (*Ex parte Young,* 8 Gill (Md.), 285; *In re Whetton's Estate,* 98 Cal. 203, 32 Pac. 970; *In re Davis' Estate,* 35 Mont. 273, 88 Pac. 957.) A special administrator has no power to invest as a general administrator may under orders of court. (*In re Higgins' Estate,* 15 Mont. 474, 28 L. R. A. 116, 39 Pac. 506; *State ex rel. Bartlett* v. *Second Judicial District Court,* 18 Mont. 481, 46 Pac. 259; *People* v. *Salomon,* 184 Ill. 490, 56 N. E. 815; *Baskin* v. *Baskin,* 4 Lans. (N. Y.) 90; 18 Cyc. 1328.)

Where the statute simply authorizes him to "collect and preserve" the estate, a special administrator has no authority or power to invest the funds of the estate; he can only collect and preserve the estate to be delivered to the general administrator as soon as one is appointed. (*People* v. *Salomon,* 184 Ill. 490, 56 N. E. 815; *Baskin* v. *Baskin,* 4 Lans. (N. Y.) 90.) It was held in the case of *In re Schofield's Estate,* 99 Ill. 513, that an administrator is not chargeable with interest merely because he has deposited the money of the estate with his own money,

so long as it remains subject to his command and the order of the court.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On May 26, 1916, Andrew J. Davis, special administrator of the estate of Rachael E. Williams, deceased, presented in court his final account. The general administrator and the guardian of Dorothy Alice Williams interposed certain objections, and after a hearing the court entered its order of May 29, 1917, as amended by an order of June 16, 1917, sustaining some of the objections and overruling others. The objectors have appealed from the order as amended in so far as it fails to charge the special administrator with interest on funds of the estate in his possession, and the special administrator has likewise appealed from it in so far as he deems himself aggrieved. The appeals are consolidated and will be considered in their order.

We enter upon our consideration of these appeals indulging [1] the presumption that the district court was fully justified in appointing the special administrator and that his possession of the property of the estate until the general administrator qualified was lawful. The will was valid upon its face and required extrinsic evidence to demonstrate its invalidity. Davis was an executor named in the will, and, assuming the existence of the necessity for a special administrator, he was entitled to be appointed. (Rev. Codes, sec. 7472.)

1. *The objectors' appeal:* Apparently the objectors seek to charge the special administrator with interest upon either of two theories: (1) Because he could have loaned the funds of the estate and did not, and was therefore guilty of negligence in its management and should be held to pay interest at the legal rate; (2) because he did employ the money of the estate in such manner that it realized a profit to him personally and he should be held to account for the profit or be required to pay interest in lieu thereof.

(1) It is idle to cite sections of the Code or decided cases which have to do with the duties and liabilities of a guardian, an executor, or a general administrator, for they have no application to a special administrator, whose duties, powers and responsibilities are defined by sections 7470–7476, Revised Codes, [2] His office is one specially created by statute with limited tenure and limited powers. To determine whether a particular duty is imposed upon him, he has but to consult these seven sections of the Code, and, if the duty is imposed, it is there disclosed. If the statute is silent, it is so because the legislature has withheld the duty. These sections have been construed to limit the functions of a special administrator to the exercise of such powers only as are "necessary to collect and preserve the estate for the executor or administrator to be regularly appointed." (*State ex rel. Bartlett* v. *District Court,* 18 Mont. 481, 46 Pac. 261; *Ford's Estate,* 29 Mont. 283, 74 Pac. 736.) The reason for the rule must be apparent to anyone. The special administrator holds temporarily and may be called upon to relinquish his control any day. His authority ceases automatically upon the appointment and qualification of the executor or general administrator. (Sec. 7475, Rev. Codes.) To such an extent are the provisions of sections 7470–7476 exclusive, that [3] the court whose officer the special administrator is cannot require him to go beyond the fair import of their terms, and any acts done by him beyond the scope of the authority conferred are void. (*State ex rel. Bartlett* v. *District Court,* above.)

It is worthy of note, in passing, that the duty to loan the funds of an estate is not imposed upon an executor or general administrator as such. (*Brenham* v. *Story,* 39 Cal. 179.) The duty might be required by statute, but in this state it has not been done. (*Davis' Estate,* 35 Mont. 273, 88 Pac. 957.) Such an officer may, however, be directed, by order of court made after notice, to loan the funds for a limited period and upon certain specified securities only. (Sec. 7652, Rev. Codes.) [4] But the *authority* to loan the funds of an estate is not

conferred upon a special administrator, evidently because of the fact that his tenure is uncertain and he may be called upon to turn over the property at any time. It was impossible for the special administrator to anticipate that he would have the control of the funds of this estate for any considerable period; but, even if he could have done so, the statute which measures his duties and responsibilities does not permit him to loan the funds, and this of itself is sufficient reason why he cannot be held to pay interest for his failure to do that which he had no authority to do. (*People ex rel. Bulkley* v. *Salomon*, 184 Ill. 490, 56 N. E. 815.)

(2) The statute which enumerates the powers of a special [5] administrator does not authorize him to traffic in the funds, but by implication prohibits him from doing so. Furthermore, the title to this property passed to the heirs immediately upon the death of Rachael E. Williams, subject only to the control of the court for the purposes of administration (sec. 4819, Rev. Codes), and from these premises it follows as of course that, if the special administrator received any profits from funds in his hands by virtue of his office, they likewise belong to the heirs as constituting a part of the estate and must be included in his final account.

The only question then is: Did the special administrator receive any profits from funds which constituted a part of this [6] estate? The presumption is that his official duties were regularly performed and that he did not abuse his power, and the burden of showing that profits accrued to him is upon the objectors who make the charge of wrongful conduct. (*In re Dolenty's Estate*, 53 Mont. 33, 161 Pac. 524.)

The facts disclosed are that, when Rachael E. Williams died [7-9] in 1907, she had on deposit with the First National Bank of Butte a considerable amount of money in an open, checking account upon which the bank did not pay any interest. When Mr. Davis qualified as special administrator and took charge of the property, no change whatever was made in the character of this account, except to have the books of the bank show that it

was carried in the name "Rachael E. Williams' Estate" and subject to check by Mr. Davis as special administrator. Subsequently deposits were made to the credit of the account and certain expenses paid from it. Because of the will contest and appeals incident thereto (*Williams' Estate*, 50 Mont. 142, 145 Pac. 957; *Id.*, 52 Mont. 192, Ann. Cas. 1917E, 126, 156 Pac. 1087; *Id.*, 52 Mont. 366, 157 Pac. 963), the special administration was permitted to drag out over a period of nine years, during all of which time the money in the estate continued on deposit in the bank under the same arrangement as a checking account upon which no interest was paid. During all this time Mr. Davis was the president and guiding genius of the bank and the owner of eighty-six per cent of its capital stock. The bank is one of the largest institutions of its kind in the state and one of the most successful, paying handsome dividends upon the stock, earned principally from interest upon loans.

It is not contended that *a solvent* bank is not a proper depositary for the safekeeping of estate funds, or that Davis received directly anything for the use of these funds by the bank; but it is insisted that, as these funds were mingled with other funds of the bank, the aggregate of which produced the profits made by the bank, Davis did profit by their use by reason of his ownership of bank stock. In other words, a certain proportion of the dividends paid to Davis represents earnings of the funds of this estate. As already observed, the duty imposed by statute was to exercise ordinary care to keep these funds safely and in condition to be turned over to the general administrator at any time. So long as the funds were so kept, the place of their keeping is of no consequence. They might have been locked in a private safe, in a safe deposit vault, or deposited in a solvent bank subject to payment on demand without interest, and in either event payment over to the general administrator of the funds so received, less legitimate expenses incurred, would have operated to exonerate the special administrator. Does the fact that Davis owned stock in the bank which was the depositary alter the situation? If he is

liable because he owns stock in the bank, then it is immaterial whether he owns eighty-six per cent of the stock or one per cent. If he is liable because he controls the institution, then it is immaterial whether he owns eighty-six per cent or a bare majority of the stock.

The only theory upon which a special administrator can be held for profits accruing upon estate funds in his hands by virtue of his office is that he has made an unlawful use of the funds, for, as we have already pointed out, he cannot lawfully invest them, loan them, or use them. In what respect did Davis violate the law in keeping these funds in the First National Bank? The funds were kept safely and subject to payment on demand at any time. They were kept in the depositary selected by the deceased in her lifetime for her own funds, and in an institution over which the special administrator had supervision, and of the solvency of which he had personal knowledge. The fact that Davis owned stock in the bank does not convert into an unlawful act that which otherwise would have been lawful. When these funds were deposited, the money became the property of the bank and the bank became debtor to the estate, or, more strictly speaking, to the special administrator. (*Stadler* v. *First Nat. Bank,* 22 Mont. 190, 74 Am. St. Rep. 582, 56 Pac. 111; *Murphy* v. *Nett,* 51 Mont. 82, L. R. A. 1915E, 797, 149 Pac. 713.) When the bank used these funds to make profit, it was using its own funds, not the funds of the estate, and dividends paid to Davis were profits earned upon the bank's own money, not upon money owned by this estate.

If it can be said that the corporate entity, "First National Bank of Butte," is a mere phantom, or that the name is but an *alias* under which Andrew J. Davis conducts his private business, then, upon the authority of *Barnes* v. *Smith,* 48 Mont. 309, 137 Pac. 541, and *Hanson Sheep Co.* v. *F. & T. State Bank,* 53 Mont. 324, 163 Pac. 1151, we would say that a deposit with the bank was a deposit with himself, and use of this money by the bank was use of it by Davis and he must account for any profits accruing from such unauthorized use. This institution

was organized under and conducts its business by virtue of the national banking laws of the United States. It must have at least five directors (sec. 5145, Rev. Stats. [6 Fed. Stats. Ann., 2d ed., p. 703; U. S. Comp. Stats. 1901, p. 3463; U. S. Comp. Stats. 1916, sec. 9683]), each of whom must be a *bona fide* owner of at least ten shares of stock (sec. 5146 [6 Fed. Stats. Ann., 2d ed., p. 704; U. S. Comp. Stats. 1916, sec. 9684]) of the par value of $100 each (sec. 5139 [6 Fed. Stats. Ann., 2d ed., p. 688; U. S. Comp. Stats. 1916, sec. 9676]). It is subject to visitation by the proper officers of the government, is a unit of the federal reserve system, and fourteen per cent of its capital stock is owned by persons other than Mr. Davis. Since the government apparently does not place any restriction upon the amount of capital stock which one individual may own, except the restriction implied in the sections cited above, we do not think it can be contended that the charter of this bank is subject to forfeiture because one man owns sufficient stock to control the election of the directors and the policy of the bank, or that the bank is a mere device under cover of which Davis conducts his own private business.

The order of the trial court refusing to charge the special administrator with interest is clearly correct and must be affirmed.

2. *The special administrator's appeal:* Complaint is made that the court erroneously refused to allow to the special administrator as credits: (a) Certain costs and expenses incurred in the Henry Williams estate; (b) an attorney fee; (c) certain taxes paid; and likewise erroneously charged him with (d) an item of $3,950.23, (e) an item of $500, and (f) the entire costs of this hearing.

(a) It appears from the record that the court costs were [10] incurred by Davis acting as special administrator and in his private capacity as residuary legatee under the spurious will, and though benefit may have accrued to the estate by reason of the litigation in which these expenses were incurred, so long as it was impossible to separate the costs personal to Davis

from those incurred on behalf of the estate, the court was justified in refusing any credit on account of these items.

(b) Rachael E. Williams died about March 3, 1907. On March 15 a paper purporting to be her last will was offered for probate in the district court of Silver Bow county. Certain objections were interposed, and, pending the hearing, Davis was appointed special administrator of the estate, qualified and took possession of the assets. In the meantime, on March 9, A. Short, public administrator of Deer Lodge County, secured from the district court of that county his appointment as administrator of this estate, and thereafter, in December, 1909, petitioned the court of Silver Bow county to remove Davis as special administrator and secured a citation to Davis to show cause why he should not be required to deliver possession of the property of the estate to the Deer Lodge administrator. Davis employed Geo. F. Shelton, an attorney, who prepared written opposition to the motion and a return to the citation, and conducted the proceedings in court to a determination successful to the special administrator. For the services so performed, Davis paid Shelton $750, which is admitted to be reasonable compensation for the services rendered, and in his final account the special administrator, after setting forth the facts, asked that he be given credit for the amount as a legal charge against the funds of the estate. Upon objection, the district court refused to allow the credit. Upon what theory this claim was disallowed we are unable to understand. As special administrator it was the duty of Davis to retain possession of the property belonging to this estate, until an executor or general administrator was legally appointed and duly qualified. The district court of Deer Lodge county had no jurisdiction over the estate —the deceased being a resident of Silver Bow county at the time of her death—and the order appointing Short was *coram non judice*. (Sec. 7383, Rev. Codes.) Davis could not lawfully surrender possession of the property to Short, but he was required by virtue of his office to resist the proceedings and was authorized by section 7474 to do so.

The mental attitude of Davis toward the property in the estate is of no consequence. He discharged a duty imposed upon him by law and is entitled to credit for the reasonable expense incident thereto. In the brief of counsel for objectors it is urged that Davis' contest of the Short proceedings was waged by him as a residuary legatee under the spurious will, but the record does not sustain this contention and could not. The return to the citation discloses that Davis appeared as special administrator and not otherwise. Indeed, he could not have defended upon any other ground. As residuary legatee he had no right to the possession of the property and no preference right to appointment as special administrator. It was only in his capacity as special administrator that he could be heard to insist upon his right of possession and his duty to retain such possession.

(c and d) Three thousand nine hundred and fifty dollars and twenty-three cents came into the possession of the special administrator by virtue of ancillary administration had in England. No third party disputed the title of the estate to this money, and it was not a part of Mr. Davis' duty to raise any question so long as he does not claim it himself. *Prima facie* the money belonged to the estate and the court properly charged it to the special administrator.

In June, 1916, the special administrator delivered to the general administrator the property of the estate which he admitted belonged to it, but withheld this $3,950.23 pending a decision upon this hearing. While thus retained, this sum was subject to taxation for the year 1917 and $169.84 paid out of it for such taxes. The special administrator now insists that he should be credited with the amount of the taxes and required to account for only $3,780.39, the residue. The contention is based upon the assumption that the property was subject to taxation and that the estate is not prejudiced by the fact that the taxes were paid, even though irregularly, by someone other than the general administrator. As an abstract proposition, this conclusion might follow if the premises were sound; but if

this fund had been delivered in June, 1916, as it should have been, the general administrator might have secured authority under section 7652, above, to invest it in government bonds exempt from taxation or in other interest-bearing securities which would have produced an income sufficient to pay the taxes, at least. It was withheld wrongfully, and the burden of showing that no prejudice resulted to the estate by reason thereof was upon the special administrator, and in this he failed.

(e) Among the effects of Rachael E. Williams at the time of [13] her death were certain articles of household furniture of the value of $1,500. The special administrator took possession of this property and put a caretaker in charge of it permitting him to use the furniture as consideration for his services in looking after it. The court found that by reason of such use the value of the furniture had depreciated to the extent of $500 and charged the special administrator with that amount. As heretofore pointed out, it was the duty of the special administrator to preserve this furniture for the general administrator. The manner in which it should be preserved is left to his discretion, and, if the means employed were effective and the expense to the estate not excessive, he is entitled to credit for its care. It was of no consequence to the estate whether $500 in cash was paid for the care of this property, or an equal amount expended upon it through its use by the caretaker. The result would be the same. The special administrator offered evidence to show that by the means which he employed the estate was depleted $400 less than it would have been had he crated the furniture and stored it as he might have done. We cannot understand the theory upon which **an expenditure** of approximately $900 would be approved and an expenditure of $500 to accomplish the same end, rejected. In charging the special administrator with this item, the court erred.

(f) The court taxed all the costs of this hearing against the [14] special administrator personally. Speaking generally, costs in probate proceedings are governed by section 7718, Revised Codes, which provides that the costs may be taxed against

any party to the proceeding or ordered paid from the funds of the estate as justice may require. New York and California each has a similar statute, and it has been held—and we think rightly—that the controlling consideration in every instance is: Did the party against whom it is sought to have the costs taxed act in good faith with respect to the particular matter which gave rise to the costs? (*Noyes* v. *Aid Society*, 70 N. Y. 484; *Henry* v. *Superior Court*, 93 Cal. 569, 29 Pac. 230.)

It is conceded by counsel for objectors that an item of $30 is erroneously included in the cost bill. It appears that the [15] sum of $93.20 was paid to witnesses called by the objectors to testify with reference to their claim that the special administrator should be made to pay interest. This contention was determined in his favor, and certainly it cannot be said that he acted in bad faith in refusing to account for interest which he was not required to pay. Justice does not require him to pay the costs of defending against an unjust claim.

The cause is remanded to the district court, with directions to modify the order as amended, by crediting the special administrator with $750 paid Geo. F. Shelton as an attorney fee in the Short proceedings, by eliminating the item of $500 for depreciation of furniture, and by deducting $123.20 from the cost bill, and, when thus modified, the order will stand affirmed, but the special administrator will be entitled to deduct from the funds of the estate now in his possession one-half of his costs of these appeals. Except as herein otherwise directed, each party will pay his own costs of these appeals.

*Modified.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.