BANK v. FLOYD.

(Filed October 2, 1906).

*Banks and Banking—Out-of-Town Collections—Agency—
Selection of Sub-Agents—Drawee—Correspondents—Lia-
bility—Custom—Contracts.*

1. Where a paper is deposited with a bank for collection which is
   payable at another place, it shall be presumed to have been intended
   between the depositor and the bank that it was to be transmitted to
   the place of residence of the promisor, drawee or payer.

2. Where a bank received for collection a paper on a party at a distant
   place, the agent it employs at the place of payment is the agent
   of the owner and not of the bank, and it is not liable for the errors
   or misconduct of the sub-agent to which it forwarded the paper,
   provided it exercised due care in the selection.

3. It is negligence in a bank having a draft or check for collection to
   send it directly to the drawee, and this is true though the drawee
   is the only bank at the place of payment.

4. A custom by which a bank, having a check upon its own correspond-
   ent in good standing, intrusts it with the collection, is unreason-
   able and invalid, and if the bank adopts that mode it takes upon
   itself the risk of the consequences.

5. A contract, that out-of-town items are remitted at owner's risk until
   the bank receives full actual payment, does not relieve the bank
   from its own negligence, but only from the negligence or misconduct
   of its sub-agents properly selected.

6. Where the defendant bank received for collection a check drawn on
   its correspondent bank, to which it forwarded it, and upon receipt
   of the check by the correspondent it was immediately cancelled and
   the amount charged to the drawer, who had funds sufficient to meet
   it, and the correspondent on that day had in its vaults an amount
   sufficient to have paid the check, and the correspondent failed a
   week later, not having remitted the proceeds: *Held,* the defendant
   bank is liable.

ACTION by Bank of Rocky Mount against W. J. Floyd,
Murchison National Bank, and others, heard by *Judge E. B.
Jones* and a jury, at the April Term, 1906, of the Superior
Court of Edgecombe. From a judgment against the Murchi-
son National Bank, it appealed.

*Gilliam & Bassett* for the plaintiff.
*E. K. Bryan* for the Murchison Bank.
*Baltle & Cooley* for W. J. Floyd.
*F. S. Spruill* for W. H. Griffin.

CONNOR, J. This action is prosecuted by plaintiff bank against the Murchison National Bank and the other defendants for the recovery of $1,059, being the amount of a check drawn by Griffin & Aiken on the Merchants and Farmers Bank of Dunn. In the view which we take of the case much of the testimony becomes immaterial. The plaintiff set forth several causes of action against the different defendants. The facts material to the discussion and decision of the case, in regard to which there is but little, if any, controversy, are:

Griffin & Aiken on 27 January, 1904, gave to defendant Floyd, in payment of a note held by his wife, their check on the Merchants and Farmers Bank of Dunn for $1,059. On 29 January, 1904, Floyd deposited the check for collection in the plaintiff bank, and by an arrangement made with said bank the amount was credited to him, to be charged back if the check was not paid. Floyd drew several checks against the credit. On the same day the plaintiff bank forwarded the check for collection to defendant Murchison Bank, its correspondent at Wilmington, N. C. It was received on 30 January, 1904, and on same day forwarded, for collection, to its correspondent, the Merchants and Farmers Bank of Dunn, N. C. The check was received by the bank at Dunn on 1 February, 1904; was marked "Paid," and charged to Griffin & Aiken, the drawers, who had funds to their credit in excess of the amount of the check.

On 2 February, 1904, the Murchison National Bank wrote plaintiff: "We have not been able to get any returns. Hope to get something by Monday." On 2 February, 1904, the Merchants and Farmers Bank had in its vaults an amount

of currency in excess of the check. On 9 February, 1904, the Merchants and Farmers Bank closed its doors and went into liquidation. The proceeds of the check were never remitted by the bank at Dunn to defendant, the Murchison National Bank.

On 10 February the Murchison Bank wired the plaintiff bank: "Merchants and Farmers Bank, Dunn, reported closed. Check mentioned was taken, subject final actual payment. Have used every effort to collect. We do not assume any responsibility. We notified you on 6th that it was unpaid." Plaintiff bank wired: "Telegram. All liability on us will fall on you and Dunn Bank. Notify it." The introduction of this telegram was objected to, and exception duly noted to its admission. While we think it competent, its admission was entirely harmless. It did not in any respect change the status of the parties.

The Murchison Bank on 9 February wired the plaintiff that it had no returns from Dunn and had sent a man there, advising that plaintiff's customer send some one there.

Mr. Tillery, cashier of plaintiff bank, testified: "The Murchison National Bank notified us of the receipt of the cash item of $1,059, and they had on it the same, or in substance the same, as our credit-card had relative to our side collections. The usual credit-card customary among banks relative to collections of papers outside of the town in which the bank is located is to receive them with the understanding and agreement that the bank so receiving shall not be liable until it receives actual final payment, and the credit-card which acknowledged the receipt of the check of $1,059 had printed on it the following: 'Items outside of Wilmington are remitted at owner's risk until we receive full actual payment.' And this is the usual custom among banks relative to out-of-town collections. I do not know which route the mail goes from Wilmington to Dunn. I think it goes by Goldsboro. Goldsboro is between Rocky Mount and Wilmington.

We do not take Sunday mail out of the post-office until Monday."

The Murchison Bank, at and about the time of this transaction, sent other collections to the Dunn Bank. There was much testimony in regard to the transactions between the Dunn Bank and the Murchison Bank between 1 February and 10 February, 1904, which is immaterial in the view which we take of the case. The defendant Murchison Bank tendered a number of issues directed to the several aspects of the controversy, which are eliminated from this discussion. We carefully examined them and find that several relate to matters in regard to which there is no controversy. The others are immaterial. The issues submitted by his Honor cover the material questions in controversy. The answers to them establish the essential facts herein stated. The 12th and 13th issues are as follows: "Was the Murchison Bank guilty of negligence in the discharge of any duty it owed in connection with the collection of said check of $1,059? Ans.: Yes." "If the Murchison Bank was guilty of negligence in the collection of said check, what loss was sustained thereby? Ans.: $1,059, with interest at 6 per cent. from 6 February, 1904." Issues were submitted in regard to the conduct of the plaintiff bank and its liability to the owner of the check. The answers to these issues exonerated it from liability. This view renders it unnecessary to discuss the correctness of the instructions given.

The first question presented for our consideration is the duty of the plaintiff and the Murchison Bank to the owner, in dealing with the check. While there is a diversity of opinion and the decisions of the courts are not uniform upon the subject, this Court, in *Bank v. Bank,* 75 N. C., 534, approved and adopted the following rule of conduct: "It is well settled that when a note is deposited with a bank for collection, which is payable at another place, the whole duty of the bank so receiving the note in the first instance is seasonably

to transmit the same to a suitable bank, or other agent, at the place of payment. And as a part of the same doctrine, it is well settled that if the acceptor of a bill or promissory note has his residence in another place it shall be presumed to have been intended and understood between the depositor for collection and the bank that it was to be transmitted to the place of residence of the promisor"—or, we may add, drawee or payer. In an opinion expressed with his usual force and clearness, *Bynum, J.,* says: "This decision is consonant with notions of justice." This case has been recognized as controlling in this State, and we think is sustained by the weight of authority in other courts and the reason of the thing.

Mr. Morse in his work on Banks and Banking, vol. I, sec. 235, thus states the law: "When the paper is payable in some other place than that in which the bank is located, its duty is (1) to forward the bill, or note or check, in proper season, to a sub-agent selected with due care; (2) to send to such agent any instructions bearing upon its duty that may have been received from its depositor, and (3) to make inquiry with due diligence if notice of the arrival of the paper does not come to it within such time as it might reasonably be expected." He further says: "If a bank fails to do its duty in the matter of collection with reasonable skill and care, it is liable for the damage resulting to any party interested in the paper, whether his name appears on the paper or not." Sec. 252.

It is conceded that there is much diversity of opinion and decision in respect to the liability of the receiving bank for the default of its sub-agent, and the courts of the several jurisdictions, holding variant views, proceed upon entirely distinct and opposite constructions of the implied powers conferred upon the bank first receiving the collection. "If a bank receive a paper for collection on a party at a distant place, the agent it employs at the place of payment is the

agent of the owner and not of the bank; and, if the bank
selects a competent and reliable agent and gives proper
instructions, its responsibilities cease." *Bank v. Bank,* 71
Mo. App., 451. The two rules are stated by Mr. Morse and
the cases classified, with a discussion of the reason upon
which they rest. *Ib.,* 272-287.

As we have seen, this Court has adopted the Massachusetts
rule, which is based upon the following satisfactory reason:
"The employment of a sub-agent is justifiable, because this
manner of conducting business is the usual and known cus-
tom, and in a business which requires or justifies the delega-
tion of an agent's authority to a sub-agent, who is not his own
servant, the original agent is not liable for the errors or mis-
conduct of the sub-agent, if he has exercised due care in the
selection." Measured by this standard there can be no doubt
in regard to the conduct of the plaintiff bank in sending the
check to defendant Murchison Bank, its standing and fitness
to discharge the duty being conceded. His Honor would
have been justified in so instructing the jury. Measured by
the same rule, the Murchison Bank would have been in the
strict line of its duty in sending its collection to its cor-
respondent in Dunn but for the fact that the Dunn Bank was
the drawee of the check.

This brings us to the pivotal question in the case: Is the
drawee or payee of a bill, note, or check a suitable agent to
which such paper should be sent for collection? This ques-
tion has never been decided by this Court, hence we must
seek for an answer upon the reason of the thing, the general
principles underlying the law of agency, and adjudged cases
in other jurisdictions. By accepting the collection from the
plaintiff bank the Murchison National Bank became, in
respect to Floyd's interest, his agent; but as the amount had
been credited to him, the plaintiff was entitled to the pro-
ceeds. In this view of the case it is not material whether
the bank of Rocky Mount was the proper party plaintiff, as

all of the persons interested were before the Court and their relative rights and duties presented for adjustment. The Missouri Court of Appeals in *Bank v. Bank, supra,* in answering the question presented here, says: "It was negligence to place a collection, which as a matter of business required prompt attention, in the hands of the debtor to collect from himself. The evidence here discloses the impropriety of the transaction. The defendant sent the check to Burr Oak, where it arrived on the 9th. If it had sent it to some one other than the debtor, it would undoubtedly have been paid, since the bank continued to do business and meet its obligations on the 9th and 10th." Morse on Banks, sec. 236, says: "The debtor cannot be the disinterested agent of the creditor to collect the debt, and it cannot be considered reasonable care to select an agent known to be interested against the principal to put the latter into the hands of its adversary; surely, it is not due care in one holding a promissory note for collection to send it to the debtor, trusting him to pay, delay or destroy the evidence of debt as his conscience permits. If this would not be reasonable care and diligence, why should the same conduct be held to be reasonable care and diligence when applied to a bank?" citing *Bank v. Bank,* 117 Ill., 100; 57 Am. Rep., 855. To the same effect are all of the authorities to which we have been cited and which we find in our investigation.

The law is well stated in *Ger. Natl. Bank v. Burns,* 12 Col., 539, in which it is said: "Even if we can conceive of such an anomaly as one bank acting as the agent of another to make a collection against itself, it must be apparent that the selection of such an agent is not sanctioned by businesslike prudence and discretion. How can the debtor be the proper agent of the creditor in the very matter of collecting the debt? His interests are all adverse to those of his principal. If the debtor is embarrassed there is the temptation to delay. * * * The fact that the L. Bank was a correspondent of

142—13

the defendant to a limited extent, does not alter the rule.
*   *   *   As a matter of law, such method of doing busi-
ness cannot be upheld.  It violates every rule of diligence."
In *Bank v. Goodman,* 109 Pa. St., 428, it is said: "Such
suitable agent must, from the nature of the case, be some one
other than the party who is to make the payment." *Auten,
Receiver, v. Bank,* 47 L. R. A., 329 ; 1 Dan. Neg. Inst., 328.
In *Farley Natl. Bank v. Pollak,* 2 L. R. A. (N. S.), 194, the
same principle is announced, and in the note it is said : "The
American cases are almost unanimous in support of the doc-
trine that it is negligence in a bank having a draft or check
for collection to send it directly to the drawee."  The anno-
tator gives a long list of authorities sustaining this proposi-
tion.  The defendant Murchison National Bank, however,
insists that it has shown that the custom or usage prevails by
which a bank, having a check upon its own correspondent in
good standing, may intrust it with the collection.  The same
point has been frequently made, and almost uniformly met
with the declaration that such custom, if shown to exist, is
invalid.

In this connection it is said by the Court of Appeals of
Missouri, in *Bank v. Bank, supra:* "It was said to be cus-
tomary for banks to transmit collections to their correspond-
ent, even though such correspondent was the debtor.  To this
we answer that it is not a reasonable custom, and therefore
must fail of recognition by the courts.  We concede it may
be and perhaps is, in many instances, the most convenient
mode for the bank intrusted with the collection.  But if the
bank adopts that mode it takes upon itself the risk of the
consequences."

In *Min. S. and Door Co. v. National Bank,* 44 L. R. A.,
507, the Court says: "We cannot agree with counsel that
the usage and custom here relied upon as a defense to the
claim that the defendant was negligent when forwarding
this check to the Mapleton Bank for presentation and pay-

ment, as a general usage and custom, will not justify negligence. It may be admitted that such a course is frequently adopted; but it must be at the risk of the sender, who transmits the evidence upon which the right to demand payment depends to the party who is to make the payment. Such a usage and custom is opposed to the policy of the law, unreasonable and invalid." In *Farley Natl. Bank v. Pollak, supra, Simpson, J.,* says: "A custom must be reasonable, and the best-considered cases hold, not only that the bank or party who is to pay the paper is not the proper person to whom the paper should be sent for collection, but also that a custom to that effect is unreasonable and bad." The same rule is laid down in the notes and a number of cases cited to sustain it. Morse on Banks, sec. 236.

The defendant says, however this may be, the check was received for collection pursuant to an express contract that "items outside of Wilmington are remitted at owner's risk until we receive full actual payment." This language was brought to the attention of the plaintiff bank, and we may assume entered into the contract under which defendant received the paper for collection. We cannot suppose that it was intended to be understood as releasing the defendant from the consequences of its own negligence. The extent to which it will be permitted to exonerate defendant bank is that it shall not be responsible for the negligence or misconduct of its sub-agents properly selected. If given its literal meaning, no liability whatever in respect to the collection of the check would attach to it. This construction would relieve it from the duty of using due care in the selection of a sub-agent. If such is the proper construction of the language, and if, thereby, it is relieved from the responsibility for its own negligence, we should not hesitate to hold it unreasonable and invalid.

An agreement to relieve an agent or fiduciary of all responsibility for its own negligence or misconduct is unrea-

sonable and cannot be sustained. This is elementary learning as applied to common carriers. 6 Cyc., 392. It would seem equally so when it is sought to relieve a person or corporation from all responsibility for a breach of its contractual duty by negligence or otherwise. Doubtless, in view of the fact that many courts hold that the receiving bank sending a collection on a distant point to its correspondent at the place of payment is responsible for the negligence or misconduct of such sub-agent, the defendant bank, wishing to restrict its liability in this respect, placed upon its stationery the language in question. While, as we have seen in this State, no such liability attached, we can see no reason why, in those States where the law is otherwise, a contract to this effect would not be valid. It is simply an agreement that the receiving bank shall have the power to select the proper agent to collect the check at the place of payment and that such sub-agent shall thereby become the agent of the owner of the check.

But when it is sought to relieve itself of all liability for negligence in the selection of such agent quite a different question arises. Whatever may be the proper construction of the language, we do not think that the defendant Murchison Bank was authorized, in violation of a well-settled rule of law, to send the check to the drawee; and if by reason of doing so, loss has been sustained, it must be held responsible therefor. It appears that upon the receipt of the check by the Dunn Bank on 2 February, 1904, the cashier of said bank immediately cancelled the same and charged the amount to the drawer, who had funds sufficient to meet it. It further appears that on that day the Dunn Bank had in its vaults an amount sufficient to have paid the check. The defendant, however, contends that as the Dunn Bank was insolvent, the status of the parties was in no respect changed; that it was "a mere playing with figures," and cites *Bank v. Davis,* 114 N. C., 343.

It was clearly the duty of the Dunn Bank upon presentation of the check to pay it and to remit the proceeds. Its customer had funds for that purpose and the bank had funds to meet this customer's check. There is no suggestion that on 2 February the Dunn Bank anticipated an immediate closing. The testimony is all to the contrary. It cannot be doubted, therefore, that it was a good payment of the check. If the check had been sent to some other person and presented on 2 February, there is no suggestion that it would not have been paid. The temptation to the Dunn Bank to retain the money instead of immediately remitting, as was its duty, is a danger which the law guards against by prohibiting the sending of the check for collection to the drawee bank. It therefore seems clear that the failure of the plaintiff bank to receive the proceeds of the check was due to the breach of duty on the part of the Murchison Bank in sending it to the Dunn Bank. In other words, that such breach of duty was the proximate cause of the loss.

There are a large number of exceptions to his Honor's rulings in the admission of testimony, and the instructions given and declined. The scope of the action, as set forth in the complaint, comprehends a number of questions affecting the rights and liabilities of the several defendants, which were properly discussed in the brief. We are of the opinion that, eliminating every other phase of the case, the right of the plaintiff to recover of the defendant Murchison Bank rests upon facts found by the jury, being largely upon undisputed testimony.

We do not think it necessary to discuss or decide the other questions; they are not so related to the facts upon which the conclusion is based as to affect the result. The entire testimony, and the result of the action in sending the check to the drawee bank, although entirely unexpected, strongly illustrates the wisdom of the law which declares that the party whose duty it is to pay is not the proper party to

assume the duty of collecting. The testimony shows diligence on the part of the officers of the Murchison Bank to secure its customers after the discovery of the trouble, but this cannot relieve it of liability for the original breach of legal duty. It has been held that if the drawee be the only bank at the place of payment, an exception to the general rule is made. This holding is not in harmony with the best thought on the subject or the principle underlying the law of agency. While the convenience of persons and corporations engaged in particular lines of business, and the general custom recognized and acted upon, are properly given consideration in the construction of contracts and fixing rules of duty and liability, elementary principles of law founded upon the wisdom and experience of the ages should not be violated.

Upon a consideration of the whole record we find
No Error.