JENSEN, RESPONDENT, v. LAUREL MEAT CO., APPELLANT.

(No. 5,578.)

(Submitted September 24, 1924. Decided November 25, 1924.)

[230 Pac. 1081.]

*Banks and Banking—Checks and Drafts—Rights and Liabilities of Parties—What Constitutes Payment.*

Banks and Banking—Checks—When Deposit Presumed to be for Collection.
    1.  Where one deposited in a local bank a check drawn on an outside bank without any special agreement, the presumption obtains that it was deposited for collection, and the title to it remained in him even though he was given credit for the amount in his pass-book and permitted to draw against the deposit provisionally.

Same—Check Sent for Collection—Collecting Bank Agent of Owner.
    2.  A bank to which a check is sent through the instrumentality of other banks, for collection and which accepts it for that purpose, becomes the agent of its owner.

Same—Check—Mere Delivery Does not Constitute Payment of Debt.
    3.  A check is merely an order for money, and in the absence of any agreement to the contrary, its acceptance in discharge of an indebtedness is conditional upon its payment; hence bare delivery of a check by the debtor to the creditor does not discharge the obligation.

Same—Bank may Send Check for Collection Directly to Bank upon Which Drawn.
    4.  Under section 6108, Revised Codes of 1921, a bank doing business in the state and receiving a check for collection may send it for payment directly to the bank upon which it is drawn, and if it uses due diligence in making the collection—if it does so in the usual course of business—the failure of the bank to which it is sent to account for the proceeds does not render the forwarding bank liable.

Same—Check—Presentment for Payment—Accepting Draft Instead of Cash at Risk of Holder.
    5.  A first due presentment of a check for payment fixes the rights and liabilities of the parties, and if when due presentment is made the drawee bank is ready, able and willing to pay, and

---

1.  Title to check drawn on another bank which has been credited to depositor, see notes in 7 L. R. A. (n. s.) 694; 47 L. R. A. (n. s.) 552.
3.  Acceptance of check as payment, see note in 69 Am. St. Rep. 346.
4.  Diligence required in collecting check taken by collecting bank, see note in 3 L. R. A. (n. s.) 1167.
Duty and right of Federal Reserve Bank as to bank collections, see note in 30 A. L. R. 647.
Liability of bank sending paper to drawee bank for collection, see notes in 8 Ann. Cas. 372; Ann. Cas. 1912B, 123.

[71 Mont. 582.]

the holder permits the fund to remain longer in its hands or accepts in lieu of the money the bank's draft on another bank, he does so at his own risk and cannot extend the drawer's liability.

Same—Check Sent for Collection—Payment in Money Required.

6. A bank accepting a check for collection is authorized to receive money only and has no implied authority to receive a draft instead, and if it does so, it assumes the risk that the draft will be paid and becomes liable to the owner for the amount of the check in case of nonpayment.

Same—Collecting Bank Accepting Draft Instead of Money—Effect on Liability of Drawer.

7. At the time a collecting bank presented a check to the drawee bank for payment, the drawer had ample funds in that bank to pay it in cash and it was ready, able and willing to so pay it, but acting by virtue of a business custom between the two institutions, sent a draft which was accepted but never paid because of the failure of the sending bank. *Held*, in an action by the owner of the check against the drawer to recover the amount of it, that by the acts of the drawee bank in canceling the check, charging the amount of it to the drawer's account and delivering its draft to the collecting bank, the check was paid so far as the drawer was concerned; that by its failure to require payment in cash the collecting bank became liable for the amount of it, and hence that plaintiff sued the wrong party.

Same—Issuing Draft in Payment of Check—Effect on Drawer's Account.

8. Where a bank issues a draft in payment of a check sent to it for collection and charges the amount of it to the account of the drawer, it reduces its indebtedness to him to that extent, and the amount of it is no longer subject to be withdrawn by him but is held to the credit of the collecting bank.

*Appeal from District Court, Carbon County; Robert C. Stong, Judge.*

ACTION by Otto Jensen against the Laurel Meat Company. Judgment for plaintiff and defendant appeals. Reversed and remanded, with directions to dismiss complaint.

Cause submitted on briefs of counsel.

*Mr. W. L. A. Calder*, for Appellant.

The plaintiff, when he deposited the check in question with the Edgar State Bank, deposited it for collection. (7 C. J. 636, sec. 314, and note 35; *Baldwin State Bank* v. *Athens Nat. Bank*, 144 Ga. 181, 86 S. E. 538; *Fayette Nat. Bank* v. *Summers*, 105 Va. 689, 7 L. R. A. (n. s.) 694, 54 S. E. 862.) He also authorized the Edgar State Bank to follow the regular

course, and to place it in the regular channels, in having it presented for acceptance and collection. (*San Francisco Nat. Bank* v. *American Nat. Bank of Los Angeles,* 5 Cal. App. 408, 90 Pac. 558.) By his own acts, therefore, he made the Edgar State Bank and all banks through which said check passed his agents in the collection of said check. (*San Francisco Nat. Bank* v. *American Nat. Bank, supra; Consolidated Nat. Bank* v. *First Nat. Bank,* 129 App. Div. 538, 114 N. Y. Supp. 308.) The check having been sent to the Citizens' National Bank for collection, that bank in all its acts relative to said check, its acceptance, payment and cancellation, was the agent of the payee and was not the agent of the maker. (*Montgomery County Bank* v. *Albany City Bank,* 7 N. Y. 459; *Dodge* v. *Freedman's Sav. & Trust Co.,* 93 U. S. 379, 23 L. Ed. 920; *Ward* v. *Smith,* 7 Wall. (U. S.) 447, 19 L. Ed. 207; *Bank of Washington* v. *Triplett,* 1 Pet. (26 U. S.) 25, 7 L. Ed. 37 [see, also, Rose's U. S. Notes]; *Cohen* v. *Tradesmen's Nat. Bank,* 262 Pa. St. 76, 4 A. L. R. 518, 105 Atl. 43.)

Where a check is sent for collection to the bank upon which it is drawn and the bank charges the account of the depositor with the amount of the check, marks the check paid and either credits correspondent or "collections" with the amount thereof, or issues a draft in payment of the check, the transaction is the same as if the check were presented at the window, the money paid over the counter to the one presenting it and the money then paid back over the counter for credit, for the purchase of a draft or for deposit. In other words, when a bank runs a check through, debiting the account of the depositor and marking the check paid, the transaction constitutes payment. (*American Nat. Bank* v. *Miller,* 185 Fed. 338, 107 C. C. A. 456; *Montgomery County* v. *Cochran,* 126 Fed. 456, 62 C. C. A. 70; *Consolidated Nat. Bank* v. *First Nat. Bank,* 129 App. Div. 538, 114 N. Y. Supp. 308; *Sayles* v. *Cox,* 95 Tenn. 579, 49 Am. St. Rep. 940, 32 L. R. A. 715, 32 S. W. 626; *Anheuser Busch Brewing Assn.* v. *Clayton,* 56 Fed. 759, 6 C. C. A. 108; *People* v. *Merchants' & M. Bank,* 78 N. Y.

[71 Mont. 582.]

269, 34 Am. Rep. 532; *Globe Furniture Co.* v. *School Dist. No.* 22, 6 Kan. App. 889, 50 Pac. 978; 7 C. J. 627.)

Where a check has been accepted, canceled and charged to the account of the depositor, the transaction is closed and cannot be revoked. (*Akin* v. *Jones,* 93 Tenn. 353, 42 Am. St. Rep. 921, 25 L. R. A. 523, 27 S. W. 669; *American Nat. Bank* v. *Owensboro Savings Bank & T. Co.'s Receiver,* 146 Ky. 194, 38 L. R. A. (n. s.) 146, 142 S. W. 239; *Commercial Nat. Bank* v. *Armstrong,* 148 U. S. 50, 37 L. Ed. 363, 13 Sup. Ct. Rep. 533 [see, also, Rose's U. S. Notes]; *Consolidated Nat. Bank* v. *First Nat. Bank,* 129 App. Div. 538, 114 N. Y. Supp. 308.)

*Mr. John G. Skinner,* for Respondent.

It is elementary that a check given in payment of an account or indebtedness is a conditional payment, and does not constitute payment until the check itself is actually paid in cash, or its equivalent. (*United States Nat. Bank of Red Lodge* v. *Shupak,* 54 Mont. 542, 172 Pac. 324; *Taylor* v. *Wilson,* 11 Met. (Mass.) 44, 45 Am. Dec. 180; 8 C. J. 568; Eaton & Gilbert on Commercial Paper, 538; Daniels on Negotiable Instruments, 6th ed., 1623; 3 R. C. L. 1284.)

There is not any evidence in this case that would indicate that the plaintiff, or the Edgar State Bank, or anyone else, authorized the Federal Reserve Bank at Helena, or that the Federal Reserve Bank at Helena authorized the Laurel Bank to pay this check with anything except money, or its equivalent, and by its equivalent is meant a draft or check on some other bank that would be paid in the usual course of business. The plaintiff certainly did not select the Citizens' National Bank of Laurel as its agent, and never, in any manner, indicated that he wished to do business with the Laurel Bank. If there was any selection of agency, or if there is anyone responsible for the failure of the bank at Laurel to pay this check when presented, it would be the defendant, for the bank was one of its own selection.

We contend also that sections 6108 and 6109 of the Revised Codes of 1921 determine the liability of banks on negotiable instruments forwarded for collection, and define what constitutes due diligence in this state, and that there isn't any evidence from which it would appear that any bank was guilty of negligence as defined by our statute.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On December 12, 1922, Otto Jensen, of Edgar, Montana, sold and delivered to the Laurel Meat Company of Laurel merchandise of the value of $226.59, and on the same day, after banking hours, received the meat company's check for the amount, drawn on the Citizens' National Bank of Laurel. On the morning of the 13th Jensen indorsed the check in blank and deposited it with the Edgar State Bank, which forwarded it in the usual course of business through the Yellowstone-Merchants' National Bank of Billings and the Federal Reserve Branch Bank of Helena to the Citizens' National Bank of Laurel for payment, where it was received on December 17 or 18. Upon receipt of the check the Laurel bank marked it paid, charged the amount to the meat company's account, and on December 18 issued its sight draft on the Montana National Bank of Billings in favor of the Federal Reserve Bank for the amount of this check and other checks, and the draft was transmitted by mail to the Federal Reserve Bank, which in turn sent it to the Montana National Bank of Billings, where on December 22 it was protested for nonpayment, returned to the Federal Reserve Bank, and by it sent back to the Laurel bank on January 6, 1923. In the meantime, and on December 21, the Laurel bank failed and was closed by the proper authorities.

From December 12 to 21 the meat company maintained on deposit with the Laurel bank funds sufficient to pay the check,

and during the same period the Laurel bank was a going con-·
cern, with funds in its vault ample to pay the check, and, if
a demand to that effect had been made, the check would have
been paid in cash.

After the Laurel bank closed, someone assumed to credit
back to the meat company's account the amount of the check,
and took the check from the pouch containing canceled checks
of the meat company and returned it to Jensen through the
same agencies by which it was transmitted in the first instance,
and all without the knowledge or consent of the meat com-
pany.

Jensen then instituted this action to recover the purchase
price of the merchandise, and prevailed in the lower court.
The meat company appealed and now insists that upon the
undisputed facts the judgment should have been in its favor.

Certain incidental questions suggested by the respective
counsel may be disposed of somewhat summarily. and the case
simplified materially.

(1) When the check was deposited by Jensen with the
[1] Edgar State Bank without any special agreement, the
presumption is to be indulged that it was deposited for collec-
tion (2 Daniels on Negotiable Instruments, 6th ed., sec. 1623),
and the title to it remained in Jensen, even though he was
given credit for the amount of it in his pass-book and per-
mitted to draw against the deposit provisionally (2 Michie on
Banks & Banking, sec. 159.)

(2) In accepting the check for collection, the Federal Re-
[2] serve Bank became Jensen's agent, and, since the Edgar
State Bank and the Yellowstone-Merchants' National Bank
served only as instruments for effecting the transmission, they
may be eliminated from further consideration. (*Federal Re-
serve Bank of Richmond* v. *Malloy,* 264 U. S. 160, 68 L. Ed.
617, 31 A. L. R. 1261, 44 Sup. Ct. Rep. 296.)

(3) The meat company did not discharge its obligation to
[3] Jensen by delivering to him its check, for ''a check is

merely an order for money, and in the absence of any agreement to the contrary, its acceptance in discharge of an indebtedness is conditional upon its payment." (*United States Nat. Bank* v. *Shupak,* 54 Mont. 542, 172 Pac. 324.)

(4) The Federal Reserve Bank was not negligent in sending [4] the check for payment directly to the bank upon which it was drawn. The imputation of negligence might have been made prior to 1917, but by the enactment of section 6108, Revised Codes of 1921, any bank doing business in this state and receiving a check for collection may send it for payment directly to the bank upon which it is drawn, and the failure of the bank to which it is sent to account for the proceeds shall not render the forwarding bank liable if it "used due diligence in making such collection."

(5) There is not any charge of negligence or laches in presenting the check for payment. On the contrary defendant alleges in its answer that the check was duly forwarded to the Laurel bank in the usual course of business, and this constituted due diligence under the express provisions of section 6109, Revised Codes.

It is the contention of defendant that its check was paid [5-8] and its obligation to Jensen discharged when the check was received by the Laurel bank, marked "Paid," the account of the meat company charged with the amount of it, and the Laurel bank's draft issued to the Federal Reserve Bank; that so far as defendant is concerned the transaction was then closed, and neither the crediting back of the amount of the check to its account nor the return of the check to plaintiff, nor the dishonor of the draft, nor the failure of the Laurel bank, nor all of these circumstances combined, could operate to reopen it; that the money was on hand in the Laurel bank to pay the check, and, if the cash was not received by Jensen in point of fact, the failure can be attributed only to the negligence of his agent, the Federal Reserve Bank.

The drawer of a check undertakes that it will be paid upon due presentment (sec. 61, N. I. L.; sec. 8468, Rev. Codes), and a first due presentment for payment fixes the rights and liabilities of the parties (*Simpson* v. *Pacific Mutual L. I. Co.,* 44 Cal. 139). If, when due presentment for payment is made, the drawee is ready, able and willing to pay, and the holder permits the fund to remain longer in the hands of the drawee, or accepts in lieu of the money the drawee's draft on another bank, he does so at his own peril. (*Anderson* v. *Gill,* 79 Md. 317, 47 Am. St. Rep. 402, 29 Atl. 527, 25 L. R. A. 200.)

And the reason for the rule is manifest. The check calls for the payment of money upon due presentation, and the drawer cannot be held to anticipate that settlement will be made in anything but money, or that payment will be postponed after due presentation is once made. If, then, when the check is first presented for payment, the drawer has on deposit with the drawee bank funds sufficient to meet it and the drawee is ready, able and willing to pay it in cash, the drawer has fulfilled his undertaking. If the holder sees fit to disregard the mandate of the check and to settle the drawee's liability upon terms other than those proposed by the drawer, he does so at his own risk, but he cannot extend the drawer's liability.

When the Federal Reserve Bank sent the check to the Laurel bank, due presentment for payment was made as effectively as if the check had been sent by messenger and the messenger had presented it at the bank window during banking hours. And, since at that time the meat company had on deposit ample funds to meet it, and the Laurel bank was ready, able and willing to pay it in cash, the meat company had fulfilled its undertaking, and its rights were not prejudiced by the fact that the Laurel bank did not ship the currency to the Federal Reserve Bank, but, acting in virtue of a business custom or usage prevailing between the two institutions, for the sake of convenience transmitted its draft.

Nelson, who was teller in the Laurel bank at the time the draft was issued and who signed it on behalf of the bank, testified: "It was just the custom to remit by draft. I had been doing that way for some time, and the Federal Reserve Bank never took exceptions to my remitting that way."

When the draft was received by the Federal Reserve Bank the Laurel bank's method of settlement was not repudiated; on the contrary, the draft was accepted and forwarded to the Montana National Bank of Billings for payment. The only legitimate inference from the record is that the Laurel bank did just what the Federal Reserve Bank contemplated it would do, and just what it tacitly sanctioned in advance, *viz.*, canceled the check, charged the amount to the meat company's account, and issued and delivered its draft in favor of the Federal Reserve Bank. By these acts, done under the circumstances indicated, the check was paid, so far as the meat company was concerned (*Malloy* v. *Federal Reserve Bank* (D. C.), 281 Fed. 997; *Bank* v. *Floyd*, 142 N. C. 187, 55 S. E. 95; *Nineteenth Ward Bank* v. *Bank of South Weymouth*, 184 Mass. 49, 67 N. E. 670), and nothing done thereafter without its consent could operate to retract the payment.

The relationship existing between the Laurel bank and the meat company was that of debtor and creditor (sec. 7701, Rev. Codes; *In re Williams' Estate*, 55 Mont. 63, 1 A. L. R. 1639, 173 Pac. 790), and by charging the check to the meat company's account the bank reduced its indebtedness to the meat company to the extent of $226.59. That amount was no longer subject to be withdrawn by the meat company (*Farmers' Bank & Trust Co.* v. *Newland*, 97 Ky. 464, 31 S. W. 38), but was held by the Laurel bank to the credit of the Federal Reserve Bank (*People* v. *Merchants & Mechanics' Bank*, 78 N. Y. 269, 34 Am. Rep. 532).

We are fortified in our conclusion by the further consideration that upon the facts disclosed by this record the Federal Reserve Bank became liable to Jensen for the amount of the check.

In the early case of *Power* v. *First Nat. Bank of Fort Benton*, 6 Mont. 251, 12 Pac. 597, this court adopted the so-called. New York rule to the effect that there is no liability existing in favor of the owner of the check and against any collecting bank other than the initial bank of deposit—here the Edgar State Bank—but by the enactment of section 6109, Revised Codes of 1921, that rule was set aside in favor of the so-called Massachusetts rule which is that the initial bank by the mere act of deposit for collection is authorized to employ subagents who thereupon become the agents of the owner and directly responsible to him for their defaults. (*Federal Reserve Bank of Richmond* v. *Malloy*, above.)

It is the general rule that a bank accepting a check for collection is authorized to receive money only and has no implied authority to receive a draft instead, and, if it does so, it assumes the risk that the draft will be paid and become liable to the owner for the amount of the check. (*Bank of Antigo* v. *Union Trust Co.*, 149 Ill. 343, 23 L. R. A. 611, 36 N. E. 1029; *Bank* v. *Ashworth*, 123 Pa. 212, 2 L. R. A. 491, 16 Atl. 596.)

When the Federal Reserve Bank surrendered the check and accepted the Laurel bank's draft, it made that draft its own, and its liability to Jensen became fixed, as much so as if it had received the cash. (*National Bank* v. *American Exch. Bank*, 151 Mo. 320, 74 Am. St. Rep. 527, 52 S. W. 265.) But it is idle to multiply the citation of authorities. The facts disclosed in *Federal Reserve Bank of Richmond* v. *Malloy*, above, are not distinguishable from the facts in the case now before us, and the supreme court of the United States there held the Federal Reserve Bank liable to the owner of the check.

The fact that the Federal Reserve. Bank is liable to Jensen for the amount of the check is very persuasive, if not conclusive, that the meat company is not liable.

The payment of the check operated to discharge the indebtedness for which it was given, hence the defendant should have prevailed.

The judgment is reversed and the cause is remanded, with directions to the district court to enter judgment dismissing the complaint.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES RANKIN and STARK concur.

MR. JUSTICE GALEN, being absent on account of illness, takes no part in the foregoing decision.