[File No. 6240.]

McGOLDRICK LUMBER COMPANY, a Corporation, Respondent, v. FARMERS LUMBER COMPANY, OF STREETER, NORTH DAKOTA, a Corporation, Appellant.

(254 N. W. 281.)

Opinion filed April 11, 1934.

*R. D. Chase* and *H. E. Rittgers,* for appellant.

*James Morris* and *O'Hare, Cox & Cox,* for respondent.

Burke, J. On the 24th day of February, 1930, the Farmers Lumber Company, a corporation of Streeter, North Dakota, mailed its check on the Citizens National Bank of Streeter, North Dakota, for the sum of $1,976.56 to McGoldrick Lumber Company, Seattle, Washington in payment for a carload of lumber purchased by the said Farmers Lumber Company from the McGoldrick Lumber Company. The check was received in Seattle on the 26th or 27th of February and was deposited on the 27th day of February by the McGoldrick Lumber Company in the Old National Bank of Spokane, Spokane, Washington. The check was forwarded by the Old National Bank of Spokane to the Federal Reserve Bank of Minneapolis and received by the said Reserve Bank on the 3rd day of March, 1930 and forwarded by the Reserve Bank on the same day direct to the Citizens National Bank of Streeter, Northt Dakota, in a cash remittance letter sent to the said Citizens National Bank on that date in the amount of $2,632.75. On receipt of said check the said Citizens National Bank marked the check paid and charged the same against the account of the Farmers Lumber Company on the 6th day of March, 1930. At that time the Farmers Lumber Company had on deposit in the Citizens National Bank of Streeter, North Dakota, the sum of $4,177.20 and on the 24th day of February, the date the check was issued, the Farmers Lumber

Company had a balance of $6,059.59 in the said Citizens National Bank. The Citizens National Bank, at the time of charging the said check to the account of said Farmers Lumber Company, issued its draft for the amount of said check on the First National Bank and Trust Company of Fargo, North Dakota, forwarded the same to the Federal Reserve Bank, where it was received on the 7th day of March. The Citizens National Bank of Streeter closed on the 8th day of March, 1930 and the First National Bank and Trust Company of Fargo, North Dakota refused payment on the draft. At the time of issuing the draft the Citizens National Bank of Streeter had in cash $3,289.36 and on the date of the closing of the bank had the amount of $2,494.97. On the refusal of the payment of the draft the Federal Reserve Bank of Minneapolis charged back the account of the check to the Old National Bank of Spokane, which then in turn charged back the account of the McGoldrick Lumber Company. The check, marked paid and charged against the account of the Farmers Lumber Company, was placed in its statement and delivered to the lumber company with the monthly statements of canceled checks. Thereafter the McGoldrick Lumber Company brought this action against the Farmers Lumber Company and the court made findings of fact and conclusions of law favorable to the plaintiff and from the judgment entered thereon the defendant duly appeals.

The one question involved in this case is, was the indebtedness for the carload of lumber paid by the check on the Citizens National Bank of Streeter, in which bank the drawer had funds to pay the check?

It is the contention of appellant that a check is payable in cash and that if the holder of the check is willing to accept anything else in payment and drawee bank is willing to give it, the drawer of the check is not concerned and if the holder, in lieu of money, accepts a draft from the drawee bank such acceptance amounts to a payment.

In support of this theory appellant relies upon the case of Haynes Equity Union Exch. v. First Nat. Bank, 63 N. D. 53, 246 N. W. 37, 87 A.L.R. 437. In that case the banks interested were in the same town. The check was drawn upon one of the banks and payable to the other bank. It was presented on the same day that the check was issued. The drawer of the check had the money in the payer bank to pay the check if payment had been demanded in cash, but in

lieu of the cash, the payee bank accepted a draft and this court held that that was payment.

That case, however, is not applicable to the instant case. In the instant case the banks are not in the same town and under the facts the case comes squarely under Chapter 92 of the Session Laws of 1927, which reads as follows: "6954A1. The Bank of North Dakota, or any national bank doing business in this state, or any state banking association as defined in § . . . 5191A12 Supplement to the 1913 Compiled Laws, which shall cash, receive for application on an obligation, or for collection or deposit and credit, any check, note, or other negotiable instrument drawn upon or payable at any other bank, savings bank, trust company, or other financial institution *localed in another city or town,* or which should be presented for acceptance or *payment in another city or town,* whether within or without this state, may, at its option, forward such instrument for presentment or collection directly to the bank on which it is drawn, or at which it is made payable, or may forward it through the Federal Reserve Bank, or other recognized banking agencies, and in payment of such collection such bank or other agency may accept the exchange or draft of the collecting or payor bank. Such method of collection shall, in the absence of a special agreement to the contrary, be deemed to be agreed to by the parties and the forwarding bank and successive agencies shall not be liable to the owner or depositor until actual final payment is received by the collection of such exchange or draft, and until such final collection the depositor, indorser, guarantor, or surety of any check, draft, or other instrument so received, deposited, cashed or credited, shall be liable to the bank to the extent of any money paid out or credit given by it on account of such instrument.

"Provided, However, that the bank and every other agency through whose hands such instrument or the proceeds thereof shall pass shall be charged with ordinary business care, and shall be liable for any lack thereof, or for any default or negligence on its part resulting in loss, but not for the default, negligence or lack of care of any other agencies, and the owner or depositor of such instrument shall have a cause of action directly against such bank, or other agencies, for his damage or loss on account of its default or lack of ordinary care."

There is no claim that there was any neglect on the part of the

plaintiff or any of the banks through which the check passed and the facts as stipulated show that it came to the payer bank in the regular and ordinary course of business. This law provides a method for the collection of checks or negotiable instruments received by a bank for application on an obligation, or for collection or deposit and credit, drawn upon or payable *at any other bank, trust company or other financial institution located in another city or town, or presented for acceptance or payment in another city or town, whether within or without this state,* and when so received such bank may at its option, forward such instrument for presentment or collection directly to the bank on which it is drawn, or at which it is made payable, or may forward it through the Federal Reserve Bank or other recognized banking agencies, and in payment of such collection such bank or other agency may accept the exchange or draft of the collecting or payer bank. Such method of collection shall, in the absence of a special agreement to the contrary, be deemed to be agreed to by the parties. Such method of collection does not apply to checks issued by one bank on another in the same town or to checks which are not sent out of town or out of the city in which the check is drawn, for in such case the holder can go to the bank and demand payment in cash, but when the check is upon banks in another city or town or when it is sent out of any city or town in payment of an obligation the holder cannot present the check to the payer bank and demand cash without great inconvenience to himself or to the payer bank and for this reason it is the intent of the law to provide a method for the collection of checks sent out of town in the regular course of business through the mails. The drawer of the check can protect himself by making the check payable in cash only, but if the check is drawn in the usual way without special agreement the drawer is deemed, in law to have consented to the statutory method of collecting such check and in the absence of negligence on the part of the payee or his agents there is no payment until the check, or draft which may have been issued in payment, is actually paid in cash. This permits payment of the check by draft, not a bad draft, but one which will be paid in the ordinary course of business in actual cash. The banks through which the check in the instant case passed until it reached the Citizens National Bank of Streeter, the payer bank, were the agents of the plaintiff but the Citizens National Bank of Streeter

was the agent of the defendant and the failure to pay the draft was the fault of the agent of the defendant and not the fault of the plaintiff or its agents.

In the case of Farmers & M. Bank v. Federal Reserve Bank, 262 U. S. 649, 67 L. ed. 1157, 43 S. Ct. 651, 30 A.L.R. 635, the United States Supreme Court had under consideration a law of North Carolina much the same as chapter 92 of the Session Laws of 1927 and the court held that in the absence of controlling decisions by the state courts the Supreme Court of the United States will construe the statute permitting payment of checks by draft as not authorizing payment by bad draft.

. The North Carolina statute was considered by the Circuit Court of Appeals in the case of Cleve v. Craven Chemical Co. (C. C. A. 4th) 18 F. (2d) 711, 52 A.L.R. 980. The court quotes from § 61, 21 R. C. L. page 62, viz.: "In the absence of any special agreement to the contrary, the mere acceptance by a creditor from the debtor of the check of a third person, payable to the creditor's order, for a pre-existing debt, is not absolute, but merely conditional payment, defeasible on the dishonor or nonpayment of the check," and then said "The rule that acceptance of the draft of the drawee bank in payment of a check releases the drawer can have no application, for the reason of the rule, the common-law requirement of cash payment, no longer exists, and the maxim applies 'Cessante ratione legis, cessat ipsa lex.'" Referring to the North Carolina statute the court citing the case of Farmers & Merchants Bank v. Reserve Bank quotes from the opinion viz.: " 'Thus the statute merely sought to remove (when the drawer acquiesced) the absolute requirement of the common law that a check presented at the bank's counter must be paid in cash. It gave the drawee bank the option to pay by exchange only in certain cases, namely, when the check was 'presented by or through any Federal Reserve Bank, post office or express company, or any respective agents thereof.' The option was so limited because the only purpose of the statute was to relieve state banks from the pressure which, by reason of the common-law requirement, federal reserve banks were in a position to exert and thus compel submission to par clearance.'

"As Cleve & White did not specify cash payment in the face of the check, they must be held under the act of 1921 to have impliedly agreed that the Bank of Vanceboro might pay it by an exchange draft

on reserve deposits, if it should be presented by or through the Federal Reserve Banks."

Minnesota also has a somewhat similar statute considered in the case of Holdingford Mill. Co. v. Hillman Farmers' Co-op. Creamery, 181 Minn. 212, 231 N. W. 928. In this case the defendant mailed its check to the plaintiff for $1,036.50. The plaintiff received the check at its place of business in Holdingford and immediately and in the usual course of business sent it to its depositary, the Stearns County Bank of Albany, for collection, and it reached the bank on December 6, 1927. It was paid by draft and fowarded to the First National Bank of Minneapolis, but the draft was not paid on account of the failure of the Hillman bank. The court said: "The Hillman bank was defendant's agent, and its attempted payment of defendant's check with a worthless draft did not become a payment in law for the goods plaintiff had sold and delivered to defendant. That it did not so become a payment was the fault of defendant's agent and not that of plaintiff or any of its agents." Citing Cleve v. Craven Chemical Co. (C. C. A. 4th) 18 F. (2d) 711, 52 A.L.R. 980, supra; Schram v. Askegaard (D. C.) 34 F. (2d) 348.

There is no merit to appellant's claim that said chapter 92 applies only to the liability of the collecting banks. Such law states specifically *that such method of collection shall in the absence of a specific agreement to the contrary* be deemed to be agreed to by the parties. The drawer and the payee are the parties and they are deemed in law to have agreed to the statutory method of collecting the check. The payment of the check by draft means payment by a good draft that will be paid in the ordinary course of business in cash. In the instant case the check was not collected and the judgment must be affirmed.

NUESSLE, CHRISTIANSON and MOELLRING, JJ., concur.

BURR, Ch. J., (dissenting). The majority opinion says this case comes squarely within the provisions of chapter 92 of the Session Laws of 1927, set forth in the opinion. I do not think this statute is applicable. Defendant's check was sent to the plaintiff at Seattle, Washington, and by the plaintiff deposited in the Old National Bank of

Spokane. The Spokane bank is not "The Bank of North Dakota, or any national bank doing business in this state, or any state banking association as defined in § 5191A12 Supplement to the 1913 Compiled Laws." It was the bank in Spokane that received the check "for collection or deposit and credit" and not any of the banking institutions mentioned in this chapter 92 of the Session Laws of 1927.

But assuming, as the majority opinion does, that chapter 92 is intended to apply to banks outside of this state the statute is not applicable to the case at bar. The check was drawn on the Citizens National Bank of Streeter of this state and when presented to that bank there were ample funds on hand to pay it. The bank gave plaintiff's agent just what plaintiff through its agent wanted—a draft, stamped the check paid and charged it to the account of the defendant.

The provisions of chapter 92 are intended to apply to the relations between the receiver of the check, the plaintiff in this case, and the bank which the receiver selects. They are "the parties" referred to in the statute. As between the plaintiff and the bank in which it deposited its check it was agreed that "such method of collection shall, in the absence of a special agreement to the contrary, be deemed to be agreed· to by the parties (that is the plaintiff and the Spokane bank) and the forwarding bank (the Spokane bank) and successive agencies shall not be liable to the owner or depositor (that is to the plaintiff in this case) until actual final payment is received, etc." This does not apply to the defendant. It states a rule of conduct between the plaintiff and the bank in which it deposits the check—the Spokane bank—and for the protection of the depositary. If the Spokane bank followed the rule laid down in chapter 92 of the Session Laws of 1927 then the plaintiff has no cause of action against the Spokane bank because it through its agents, accepted a draft instead of cash; but plaintiff would have a claim against the Citizens National Bank of Streeter on the draft it issued.

In the last analysis it resolves itself into the question of who is the creditor of the bank at Streeter on account of this check—the drawer of the check who had ample funds to pay the check when it was presented and who received the check marked paid with the amount thereof charged to its account, or the payee of the check who deposited it with the Spokane bank under a statutory agreement with the Spokane

bank that if the latter took the chance of accepting a draft plaintiff would not hold it liable.

All that the defendant agreed to do with his check is as set forth in the negotiable instruments law, to wit: that if a check be presented to the bank on which it is drawn it will "be accepted and paid—according to its tenor, and that if it be dishonored, he will pay the amount thereof to the holder, etc." Not a syllable of chapter 92 adds to the liability of the drawer, nor refers to him. Why read into the law a theory not forecast by it? The check was presented and plaintiff's agent decided to take a draft instead of cash. Had the money been paid out to the agent and then given back to the bank for a draft the situation would be quite clear. The defendant did not agree that the plaintiff could deposit the check in any bank which it saw fit, so that any action of that bank with reference to the proceeds would be chargeable to it. Defendant proclaimed to the world that the check was good, that it had the money in the bank to pay it, if presented, and the holder could get the money.

In 1923 the Colorado legislature enacted chapter 64, as follows: "Any bank or trust company doing business in this state receiving for collection or deposit any check, draft or note drawn upon or payable at any other bank or trust company may forward such instrument for collection directly to the bank or trust company on which it is drawn or at which it is made payable, and such method of forwarding such check, draft, or note for collection or payment shall not be deemed negligence, nor shall it be deemed negligence for such collecting bank to accept from the bank or trust company upon which such check or draft is drawn or at which such note is payable, its draft upon any other bank or trust company as a means toward making such collection, unless instructed otherwise by the holder or depositor of such check, draft or note."

In Peterson v. First State Bank, 79 Colo. 494, 246 P. 784, the Colorado court construed this law and held that action thereunder by a bank did not constitute negligence on the part of the bank; that by it the bank was absolved from liability as between the drawee of a check and the bank in which he deposited it; that the taking of a draft in payment of the check was not negligence on the part of the bank even though the draft was not paid because the bank on which the check was

drawn and that issued the draft failed before the draft was paid. The court held that this law was for the benefit of the bank as between the drawee of the check and the bank in which it deposited it for collection.

Shortly thereafter the court was confronted with the situation of whether this law applied to the drawer of the check when the check was presented to the bank on which it was drawn, and draft issued for the amount of the check. In McAloon v. Erickson, 84 Colo. 467, 271 P. 192, we have a case where Erickson bought a tax sale certificate from McAloon giving a check on the Cheyenne State Bank of Cheyenne for the same, under a specific statement from McAloon "that the certificate would be held 'until the money was received in payment of the check.' " McAloon deposited the check in the First National Bank of Akron; but got no credit on the deposit, the bank taking the check for collection. The Akron bank sent the check to the Cheyenne Bank with instructions to "please remit by draft." The draft was sent, but dishonored because of the failure of the Cheyenne Bank, and McAloon took back his certificate. The Colorado court held however that because the Cheyenne bank received the check Erickson was entitled to the certificate as the Akron bank was McAloon's agent, and that chapter 64 of the Session Laws of 1923 giving to a bank a right to take a draft in lieu of cash, altered "the common law rule on that point only as to banks." Here we have a case quite similar to our own. Erickson purchased goods, gave his check which was honored, and paid by draft; but the bank on which it was drawn and that issued the draft failed before the draft was cashed. The court held that a law similar to the one upon which the majority bases its decision applied only to relations between the drawee and the bank in which it deposited it. The law did not increase the liability of the drawer of the check.

In State ex rel. Sorenson v. Nebraska State Bank, 120 Neb. 539, 234 N. W. 82, it seems to be conceded that where a draft is issued by a bank upon which it is drawn the check is paid and that a subsequent controversy arising over the fact that the bank on which the check is drawn issued a draft and failed before the draft was paid is a controversy between the drawee of the check and the various banks through which the draft passed. The court holds that the drawee bank—that is the bank which failed—held the amount of the check as a trust fund

for the owner of the draft, that the drawer of the check having sufficient funds in the bank to pay it, had paid the check though a draft was issued, and that the issuing of the draft had the effect of segregating so much of the drawer's funds as were necessary to pay the check from the other funds, and created a trust fund. The court said: "Where there is transmitted to a drawee bank for collection and remittance the check of its depositor for an amount covered by such deposit and such bank then possesses cash in an amount sufficient to pay the sum and proceeds to complete the transaction by cancelling such check and charging the account of such depositor, in the absence of a special agreement it is required to allocate a sufficient amount of its cash on hand to the payment of such check, which moneys thereupon and thereafter constitutes a trust fund."

In 1925 the legislature of Nebraska enacted chapter 29 which said the collecting bank "May forward such instrument for collection directly to the bank on which it is drawn: . . . Provided, however, such forwarding bank shall have used due diligence in other respects in connection with the collection of such instrument."

This statute of Nebraska is similar to ours. But while in the Nebraska case the liability of the drawer of the check is not specifically discussed it is clearly the purpose of the court to concede the drawer of the check is absolved from liability when the check was presented to the bank on which it was drawn and marked paid. The controversy between the bank receiving the draft and the intervening banks back to the bank which received the check for collection resolves itself into a question as to which one of these banks, if any, was negligent. In other words this statute governs the relations between the drawee of the check, the bank in which he deposited it and the banks selected by this depositary as agencies; but this does not affect the drawer of the check when the check is received by his bank and paid, even though paid by draft. In this Nebraska case the court said: "True, in the instant case there is no evidence that the cash was actually counted out or otherwise physically appropriated to the payment of the oil company's check. The record is silent on this subject. But it affirmatively appears that when the check was presented the drawee's cash was there, and the duties in reference to the same are such as are enjoined by law." Page 86 of 234 N. W.

Such legislation as chapter 92 of the Session Laws of 1927 of this state is not intended to add to the liability of the drawer of the check. It governs merely the relations between the receiver of the check and the bank in which it deposits it, together with the receiver's relation to intervening agencies. As between the receiver of the check and these banks he cannot hold the bank except for specific negligence. On the other hand the drawer of the check has discharged his liability when his check is presented to his bank and charged to his account, when he has money there to pay it. If the bank in which the drawee deposited the check requests payment by draft it is a matter between the drawee and the depositary—a matter with which the drawer of the check is not concerned.

Much reliance is had on the case of Holdingford Mill. Co. v. Hillman Farmers' Co-op. Creamery, 181 Minn. 212, 231 N. W. 928. This decision sets forth the Minnesota law and a casual examination shows the difference between the two laws. Further, in my opinion, and with all due respect to the eminent court rendering the opinion, the Minnesota law is not applicable to the facts in the case as set forth in the decision for the Minnesota law makes expressly the receiving bank merely the agent for the depositor and not for the drawer of the check. The decision says the goods purchased were not paid for, but that begs the question because the issue is in that case as in this case whether the presentation of the check to the bank upon which it was drawn was not in itself payment when there was money to pay the check and when the "depositor's collecting agent" decided to take a draft instead of cash.

The drawer of the check was not concerned with what the plaintiff did with the proceeds of the check. Assuming that plaintiff's acceptance of the check was not a payment of the lumber until it was collected but therefore as between the plaintiff and defendant was received by the plaintiff for credit upon collection that did not alter the agreement of the defendant that the check would be honored upon presentation. The defendant did not say that it guaranteed to the plaintiff success in any method which the plaintiff might see fit to adopt in disposing of the proceeds nor did the honoring of the check imply that the defendant would be bound by any agreement actual or statutory which

the plaintiff would make with the bank in which he deposited the check.

I believe the judgment should be reversed.