PAGE *v.* HOLMES-DARST COAL CO.

1. BILLS AND NOTES—CHECKS ON OUT OF STATE BANKS—PREFERENCES.

Legislature of this State may not give owner of check drawn on bank in another State a preferred claim against assets of the bank where it becomes insolvent after charging drawer's account and remitting draft to collecting bank nor make statutory rule as to definition of payment apply to out of State bank (Act No. 240, §§ 7, 13, Pub. Acts 1931).

2. SAME—PRESENTATION—COMMON LAW.

Under the common law on the question of timely presentation of a check the law of the place where it is payable governs and not the law of the place where it is drawn.

3. SAME—CHECK—PAYMENT.

Payment of check will be deemed made so far as maker is concerned where payee or his agent accepts from bank upon which check is drawn something else in lieu of cash when drawee bank holds funds of drawer sufficient to pay the check.

4. SAME—COLLECTION OF CHECKS—CASH.

Bank which accepts something in lieu of cash, when collecting check, does so at its peril.

5. SAME—INSOLVENCY OF DRAWEE BANK—DISCHARGE OF MAKER.

As between maker and payee of check drawn on bank in another State, it was paid and maker discharged where maker's account was charged with its amount and remittance made by drawee bank to collecting bank's agent in form acceptable to latter although not received by latter until after drawee bank had become insolvent.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted June 7, 1934. (Docket No. 61, Calendar No. 37,605.) Decided October 23, 1934.

Assumpsit in common pleas court by Allen H. Page, doing business as Page Sales Service, against Holmes-Darst Coal Company and Holmes-Darst Coal Corporation, Delaware corporations, on a check. Recoupment and counterclaim by defendant on a check. From judgment rendered appeal was taken to circuit court. Verdict and judgment for defendants on recoupment and counterclaim. Plaintiff appeals. Affirmed.

*Bloom & Bloom,* for plaintiff.

*Thomas B. Moore,* for defendants.

BUSHNELL, J.   Holmes-Darst Coal Corporation of Knoxville, Tennessee, and Holmes-Darst Coal Company of the same place, are both Delaware corporations represented in Detroit by William L. Barie, their Michigan sales representative, who on behalf of Holmes-Darst Coal Company purchased a Plymouth coupe from plaintiff, giving in payment therefor its check in the sum of $583 drawn on the East Tennessee National Bank of Knoxville, Tennessee. Plaintiff at the same time purchased from defendant company a used Buick coupe, giving in exchange a check drawn by Maude Page in the sum of $225 on the First Wayne National Bank of Detroit. The Tennessee check dated January 11, 1933, was received by plaintiff about 7 p. m. on January 13th and deposited the following morning in the account of Maude Page in the First Wayne National Bank of Detroit, which bank on the same day forwarded it for collection to the Nashville, Tennessee, branch of the Federal Reserve Bank of Atlanta, Georgia. The drawee bank at Knoxville maintained an account in the branch Federal reserve bank, being a member of the Federal reserve bank system within the zone assigned to the Nashville branch. The testimony of the cashier of the Nashville branch indicated that in accordance with the regulations of the Federal reserve board and the provisions of the Federal reserve act, it was the practice, upon receipt of checks drawn on member banks, to credit them in what was designated as the "deferred account" of the sending bank, the credit being transferred to a reserve account when checks were actually and finally paid to the reserve bank.

Based upon experience, and in accordance with the time schedule provided by the Federal Reserve Bank of Atlanta, this credit was set up, but reserved

until the fourth business day thereafter because of the fact that January 19th was a legal holiday in Tennessee. The check having been received from Detroit by the reserve bank on the 16th, it was forwarded to the drawee at Knoxville, arriving on the 17th, at which time defendant's bank balance amounted to $6,268.02. With four other checks presented on that day, it was charged to drawer's account, leaving the balance at the close of the banking day $1,220.41. The drawee bank then, in accordance with its usual practice, forwarded by mail an "authority" dated January 17th, to charge their account on the books of the Nashville branch of the Federal reserve bank with items in excess of $200,000, consisting of several hundred checks, including the one in question. This "authority," in the usual course of transmission of the mail, could not have reached the branch until the 18th, but actually was not received until January 20th, on which date the East Tennessee National Bank of Knoxville did not open for business. Consequently the account of the member bank was not charged with any of the items contained in the "authority" dated the 17th.

Plaintiff, not having received the proceeds of defendant's check, stopped payment upon its check and brought suit against defendant, claiming damages in the sum of $583, less credit in the sum of $225, and asked judgment for $358 and interest. Defendant pleaded payment, negligence of plaintiff in presentment of check, and filed a plea of recoupment and counterclaim for the sum of $225, being the amount of plaintiff's check to defendant. Both actions were submitted to the jury, which brought in a verdict against plaintiff for $225 and interest.

Plaintiff alleges error in the court's charge to the jury, and in its refusal to read to the jury that part

of a deposition indicating insufficient funds on deposit in the branch of the Federal Reserve on January 18th, but the controlling question in the case is: Was the check of defendant paid?

The bank collection code, Act No. 240, Pub. Acts 1931, provides in section two that with certain exceptions, the bank of deposit shall be the agent of the depositor for the collection of deposited items, and each subsequent collecting bank shall be a subagent of the depositor. Section six, which pertains to the duties of the agent bank, is as follows:

"SEC. 6 (A)  Where an item is received on deposit or by a subsequent agent bank for collection, payable in another town or city, it shall be deemed the exercise of ordinary care to forward such item by mail, not later than the business day next following its receipt either (1) direct to the drawee or payor in the event such drawee or payor is a bank or (2) to another bank collecting agent according to the usual banking custom, either located in the town or city where the item is payable or in another town or city.

"(B)  Where an item is received on deposit or by a subsequent agent bank for collection, payable by or at another bank in the same town or city in which such agent bank is located, it shall be deemed the exercise of ordinary care to present the item for payment at any time not later than the next business day following the day on which the item is received either (1) at the counter of the drawee or payor by agent or messenger or (2) through the local clearing house under the regular established procedure, or according to the usual banking custom where the collecting or payor bank is located in an outlying district.

"(C)  The designation of the above methods shall not exclude any other method of forwarding or presentment which under existing rules of law would constitute ordinary care."

Payment is defined by section seven:

"SEC. 7. Where the item is received by mail by a solvent drawee or payor bank, it shall be deemed paid when the amount is finally charged to the account of the maker or drawer."

Section one of the act provides:

"For the purposes of this act, the term 'bank' shall include any person, firm or corporation engaged in the business of receiving and paying deposits of money within this State."

Obviously, the legislature of Michigan could not affect out of State banks by such provisions as that in section 13 of the act, which gives the owner of a check a preferred claim against the assets of a drawee bank which had become insolvent after charging the drawer's account and remitting a draft to the collecting bank; nor could the legislature have intended that section seven, *supra,* should apply to an out of State bank. We, therefore, must look to the principles of the common law and examine the decisions of Tennessee as to whether or not there was payment, in as much as the check was drawn on a Tennessee bank and payable in that State.

"And on the question of timely presentation the law of the place where a foreign bill of exchange is payable governs, and not the law of the place where it is drawn. In giving a bill upon a person in a foreign country, the drawer is deemed to act with reference to the law of that country." *Pierce* v. *Indseth,* 106 U. S. 546 (1 Sup. Ct. 418).

In the absence of a Tennessee statute on the subject, the common-law rule in that State is controlling. The general rule followed in almost all jurisdictions, that: "If the payee of a check, or his

agent, accepts from the drawee bank something else in place of cash, as a draft on another bank, or a deposit slip or credit, when the drawee holds funds of the drawer sufficient to pay the check, and would pay it in cash if demand therefor were made, the transaction will be regarded as a payment of the check, and the drawer discharged." 52 A. L. R. 995; 87 A. L. R. 442, and cases cited, was adopted in Tennessee in *Winchester Milling Co.* v. *Bank of Winchester,* 120 Tenn. 225 (111 S. W. 248, 18 L. R. A. [N. S.] 441).

In a recent case, *Terminal Gas & Supply Co.* v. *Medford Auto Co.,* 285 Mass. 528 (189 N. E. 805), where the collecting bank was a Federal reserve bank, as in the instant case, the court held:

"In any event, the Federal reserve bank was rightfully in possession of the checks for collection in behalf of the owner. For its own convenience it chose to accept the cashier's check of the Medford Trust Company instead of demanding and receiving money. If it had demanded and received cash, the defendant would have been discharged of all liability because its checks would have been paid. So far as concerns the defendant, the duty of the Federal reserve bank was to accept cash, and acceptance of anything else was at its peril."

The rule was also adopted in *Federal Reserve Bank of Richmond* v. *Malloy,* 264 U. S. 160 (44 Sup. Ct. 296, 31 A. L. R. 1261); *Jensen* v. *Laurel Meat Co.,* 71 Mont. 582 (230 Pac. 1081); *O'Leary Brothers* v. *Abeles,* 68 Ark. 259 (57 S. W. 791, 82 Am. St. Rep. 291); *Morris* v. *Cleve,* 197 N. C. 253 (148 S. E. 253); *Tobiason* v. *First State Bank of Ashby,* 173 Minn. 533 (217 N. W. 934). The reason for the rule is stated in the following quotation from *Anderson* v. *Gill,* 79 Md. 312, 317 (29 Atl. 527, 25 L. R. A. 200,

47 Am. St. Rep. 402), quoted with approval in *Federal Reserve Bank of Richmond* v. *Malloy, supra:*

"Now, a check on a bank or banker is payable in money, and in nothing else. Morse, Banks & Banking (2d Ed.), p. 268. The drawer having funds to his credit with the drawee has a right to assume that the payee will, upon presentation, exact in payment precisely what the check was given for, and that he will not accept, in lieu thereof, something for which it has not been drawn. It is certainly not within his contemplation that the payee should upon presentation, instead of requiring the cash to be paid, accept at the drawer's risk a check of the drawee upon some other bank or banker."

See *contra, McGoldrick Lumber Co.* v. *Farmers Lumber Co. of Streeter,* 64 N. D. 544 (254 N. W. 281).

Under the facts in this case, when the maker's account was charged with the amount of the check and remittance was made to the collecting bank in a form acceptable to the latter, the maker was discharged.

The solvency of the payee bank not being questioned, the conclusion is inescapable that defendant's check was paid, and the judgment being correct, it must be affirmed. It is so affirmed, with costs to appellee.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.